OPINION
{¶ 1} Appellant, Stella R. ("mother"), appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, to grant legal custody of her two children to the children's paternal grandmother ("grandmother").
 {¶ 2} D.A.R., dob 6/13/94, and D.L.R., dob 2/19/97, were removed from mother's custody in 1999, under allegations of neglect and dependency. The children's father, David R., was incarcerated at the time. The children were adjudicated dependent, the neglect allegations were dismissed without prejudice, and the Butler County Children Services Board ("BCCSB") was granted temporary custody of the boys.
 {¶ 3} In 2002, BCCSB moved for permanent custody of the children and a hearing was held. The magistrate stayed his decision on the motion and ordered BCCSB to facilitate what would be the eventual placement of the two children with the grandmother. In 2004 and early 2005, the juvenile court held a series of legal custody hearings after a motion for legal custody was filed on behalf of the grandmother, and both the father and mother filed motions for legal custody.
 {¶ 4} During the course of the legal custody hearings, mother withdrew her motion for legal custody and supported the father's motion. The juvenile court granted legal custody of the children to the grandmother and ordered that mother have no "direct contact" with the children until "such time as the child[ren's] therapist deems such contact to be appropriate or pursuant to further order of this court."[1]
 {¶ 5} Mother filed objections to the magistrate's decision, arguing in her motion that legal custody should have been granted to father and challenging the order that she have no direct contact with her children. The juvenile court overruled the objections and adopted the decision as the order of the court. Mother appeals and presents the following assignment of error for review:
 {¶ 6} "THE TRIAL COURT'S DECISION TO GIVE LEGAL CUSTODY TO THE PATERNAL GRANDMOTHER IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE[.]"
 {¶ 7} Mother argues that evidence at trial demonstrated that the best interests of the children would be served by mother receiving custody, or that she should be permitted direct contact with the boys.[2]
 {¶ 8} Legal custody is not as drastic a remedy as permanent custody because parents retain residual rights and have the opportunity to request the return of their children. In reA.W.-G., Butler App., No. CA2003-04-099, 2004-Ohio-2298, at ¶ 7;In re Alexander C., Lucas App. No. L-05-1173, 2005-Ohio-6134, ¶ 6.
 {¶ 9} Contrary to mother's assertions in her assignment of error, the juvenile court's standard of review in legal custody proceedings is by the preponderance of the evidence. In re Nice,
(2001), 141 Ohio App.3d 445, 455; In re A.W.-G. at ¶ 7. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. In reA.W.-G. at fn. 1.
 {¶ 10} An appellate court reviews legal custody determinations for an abuse of discretion. In re D.P., Franklin App. Nos. 05AP-117, 05AP-118, 2005-Ohio-5097, ¶ 52. Abuse of discretion connotes more than an error of law or judgment, and implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} The discretion a [juvenile] trial court enjoys in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Starks,
Darke App. No. 1646, 2005-Ohio-1912, ¶ 17, quoting Miller v.Miller (1988), 37 Ohio St.3d 71, 74.
 {¶ 12} Further, credibility issues are critical in custody cases, and the demeanor and attitude of the witnesses may not translate into the record. Miller. Therefore, an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility. In re Alexander C.,2005-Ohio-6134 at ¶ 6.
 {¶ 13} Mother also argues that the juvenile court was required to first find that she abandoned her children or, in other words, that she was an unsuitable parent. See, e.g., In rePerales (1977), 52 Ohio St.2d 89.
 {¶ 14} The requirement of finding parent unsuitability does not apply to dispositional hearings following an adjudication that the child is abused, dependent, or neglected. In reA.W.-G., 2004-Ohio-2298 at ¶ 9-12 (Perales did not arise from an abuse, neglect or dependency adjudication, and a juvenile court need not make a separate finding of parental unsuitability once a child is adjudicated an abused, neglected, or dependent child); In re D.P., 2005-Ohio-5097 at ¶ 53-54 (when there has been a dependency determination, there has already been to some degree a finding of parental unsuitability and a juvenile court is not required to make another, separate finding of parental unsuitability); In re D.R., 153 Ohio App.3d 156,2003-Ohio-2852, ¶ 13-15.
 {¶ 15} In the case at bar, the juvenile court determined that the issues before it were controlled by R.C. 2151.353, which concerns the disposition of abused, neglected, or dependent children, and stated that it must consider the best interests of the children in making its legal custody determination. See R.C.2151.353; In re Allah, Hamilton App. No. C-040239,2005-Ohio-1182, ¶ 9 (under R.C. 2151.353[A][3], the court may award legal custody to either parent or to any other person who files a motion requesting legal custody of the child, and under R.C. 2151.353, the best interest of the child is the primary consideration); In re D.R. 2003-Ohio-2852 at ¶ 17 (juvenile court should have considered each of the motions for legal custody based on a best-interest standard).
 {¶ 16} The juvenile court made a number of findings it considered pertinent in determining the best interests of the children, which included the following:
 {¶ 17} The children have lived with grandmother since 2002 and during that time, grandmother has learned to deal with the children's various emotional and psychological issues. Specifically, the boys have poor impulse control and anger issues, which have presented difficulties at school. The boys can be violent with each other.
 {¶ 18} Both children have special education needs, are involved in therapy, and have been prescribed a variety of psychoactive drugs. The juvenile court noted that grandmother has been working with physicians to reduce the number of medications given to the children.
 {¶ 19} Regarding the parents, the juvenile court found that mother "continue[s] to struggle with her mental health." The juvenile court noted that a children's services case was opened on mother and her two other children in Darke County, and "[t]hat case apparently arose due to a suicide attempt by mother earlier in 2004."[3] Mother did not regularly attend visits with the boys earlier in the case and the visits she did attend were sometimes problematic. The boys' behavioral problems were reportedly exacerbated by contact or visits with their mother. During previous visits with the mother, the children were said to be "out of control" and the visits were "chaos."
 {¶ 20} In addition, the children told their therapist that they are angry with their mother for her alleged lies and broken promises. The children's therapist opined that the boys should continue to not have contact with their mother.
 {¶ 21} The juvenile court observed that the children's mother and father have a relationship that has "times of relative harmony interspersed with periods of heated conflict." The juvenile court noted that earlier in the case mother reported that father had physically and sexually abused her, and mother has not since recanted that allegation.
 {¶ 22} Father was incarcerated at the beginning of this case, and has a felony domestic violence conviction. The juvenile court noted that father is a capable parent and visitations with his children have gone well. However, the court also noted that father remains reluctant to participate in services related to domestic violence and mental health. Father also does not "have a working knowledge" of the boys various psychological and emotional conditions and their special school programs. The juvenile court stated that father's lack of knowledge may be attributed to his misunderstanding of prior court orders. Grandmother testified that while she keeps father up to date, some of those issues were just not mentioned or discussed by her or the father.
 {¶ 23} The juvenile court found that the grandmother has succeeded in providing a stable home for the children, with the structure and consistency the boys need. The children's guardian ad litem ("GAL") recommended that both children be placed in the legal custody of the grandmother.
 {¶ 24} Upon review of the record, we find competent, credible evidence in the record to support the juvenile court's determination of the children's best interests by a preponderance of the evidence. In re A.W.-G., 2004-Ohio-2298 at ¶ 21. The juvenile court did not abuse its discretion in awarding the grandmother legal custody of the children. Id.
 {¶ 25} We note that mother argues in her appellate brief that the trial court erred, in the alternative, by failing to grant her direct contact with the children. As we previously, noted, mother's objections to the juvenile court included the contact issue. However, mother's assignment of error only addresses the legal custody determination, and mother provides little support for her argument concerning contact. In any event, there was sufficient evidence in the record that the juvenile court heard and carefully considered the issues pertaining to the contact or visitation issue. We do not find that the juvenile court erred in its decision regarding mother's current contact with the boys.
 {¶ 26} Accordingly, mother's assignment of error is overruled.
 {¶ 27} Judgment affirmed.
Powell, P.J., and Bressler, J., concur.
[1] The magistrate also dismissed without prejudice BCCSB's previous motion for permanent custody that was heard in 2002.
[2] Despite mother's stated argument on appeal, we note that mother withdrew her motion for custody during the course of this case and supported father's motion for legal custody. Mother continued the same approach when she objected to the magistrate's decision based upon the stated argument that legal custody should have been granted to father and not grandmother. Mother never gave the juvenile court the opportunity to address the argument that legal custody should have been granted to her. We will address mother's assignment of error, as it is stated, as a challenge to the grant of legal custody to grandmother.
[3] We note that there was some discovery dispute regarding the disclosure of mother's medical records, but once mother withdrew her motion for legal custody, no party pursued further attempts to secure those records, or asked that mother turn over the records she possessed.