OPINION
{¶ 1} Appellant, Phyllis F., paternal grandmother to the child at issue in this action, appeals the decision of the Brown County Court of Common Pleas, Juvenile Division, granting temporary custody of her granddaughter to Brown County Department of Job and Family Services. For the reasons detailed below, we affirm.
 {¶ 2} On July 7, 2005, Brown County Department of Job and Family Services ("BCDJFS") received a referral that Amber R., mother-appellee, tested positive for marijuana on three separate occasions during her pregnancy. BCDJFS was unable to locate Amber until September 2005, when the agency received a report from Good Samaritan Hospital that Amber had prematurely delivered a baby girl, J.B., and that both mother and child had tested positive for cocaine. Amber also tested positive for benzodiazepines and marijuana. J.B. was also born with fetal gastroschisis and was transferred to Children's Hospital Medical Center in Cincinnati, Ohio, where she received an operation to remove a large part of her protruded bowel.
 {¶ 3} On September 16, 2005, BCDJFS filed a complaint in Brown County Juvenile Court alleging abuse, neglect, and dependency, and requesting temporary custody of J.B. A shelter care hearing was held on September 19, 2005 at which point the court granted temporary custody to BCDJFS and ordered that Amber and J.B.'s "putative" father Cameron have no contact with J.B.[1] On October 12, 2005, J.B., still under the care of the Children's Hospital in Cincinnati, was adjudicated an abused, neglected, and dependent child and the court ordered that BCDJFS retain continued temporary custody.
 {¶ 4} On November 14, 2005 appellant filed a motion for custody of J.B. Because paternity had not yet been established and counsel for appellant had not filed an appearance, the court denied appellant's motion. On November 21, 2005, counsel for appellant filed an appearance and re-filed the motion for custody as well as a certified copy of the affidavit of paternity. At the disposition hearing held December 14, 2005, the court heard testimony from appellant in regards to her motion for custody. The court ordered that custody remain with BCDJFS and left visitation to the discretion of the agency. Appellant filed this appeal raising two assignments of error for our review.
 {¶ 5} Assignment of Error No. 1
 {¶ 6} "THE JUVENILE COURT'S FINDING THAT APPELLANT WAS AN INAPPROPRATE [sic] LEGAL CUSTODIAN OF THE CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Assignment of Error No. 2
 {¶ 8} "THE JUVENILE COURT ABUSED IT'S [sic] DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR LEGAL CUSTODY OF THE CHILD."
 {¶ 9} Because both of appellant's arguments dispute the ultimate custody decision made by the juvenile court, we will address appellant's two assignments of error together. Appellant argues that there was not sufficient competent and credible evidence to support the court's finding that she was not an appropriate placement option for J.B. She further contends that the court's decision denying her motion for custody was unreasonable, arbitrary and unconscionable.
 {¶ 10} The juvenile court's standard of review in legal custody proceedings is by the preponderance of the evidence. Inre D.R., Butler App. Nos. CA2005-06-150, CA205-06-151,2006-Ohio-340, ¶ 9. "`Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value." Id. An appellate court reviews the legal custody determinations of the juvenile court for an abuse of discretion. Id. at ¶ 10. Abuse of discretion connotes more than an error of law or judgment; and implies that the trial court's decision was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It is well recognized that "the discretion a juvenile trial court enjoys in custody matters `should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the impact on the lives of the parties concerned.'" In re D.R. at ¶ 11. Because credibility issues are critical in custody cases and the demeanor and attitude of the witnesses may not translate into the record, an appellate court affords great deference to a judge's findings regarding witness credibility. Id. at ¶ 12.
 {¶ 11} In the case at bar, the court received testimony from Nicole Williams of BCDJFS at both the shelter care and adjudication hearings. Williams testified that J.B.'s medical condition required that a central line IV be inserted and that medical training would be required of anyone charged with the custody and care of J.B. Ms. Williams also testified that relatives were being considered for custodial placement, but that there were concerns regarding work schedules, location, and the ability to get the proper training.
 {¶ 12} At the disposition hearing, held December 14, 2005, the court also received the testimony of appellant regarding her motion for custody. Appellant testified that she is married and a stay-at-home mother, and that she lives in Scioto County. Appellant testified that she has four sons, including Cameron B., the father of J.B., and one stepson. Two of her sons, ages 9 and sixteen, were still at home.
 {¶ 13} Appellant testified that she was aware that J.B. required extensive medical treatment and stated that she had been a nurse's aid and would be willing to take additional medical training to care for J.B. Although the home study conducted by BCDJFS had not yet been filed with the court, appellant testified that she had passed both the home study and background checks required for potential custodial placement.
 {¶ 14} Appellant also testified that she had inquired about the possibility of an outreach program through the Children's Hospital in Columbus, Ohio to assist her in caring for J.B., due to the fact that she lived a good distance from the Cincinnati Children's Hospital. However, appellant was only able to say that, to her understanding, there was an outreach program that extended into her area, and that she believed that her neighbor's daughter had been involved with the program after a back surgery. Appellant requested that she be granted temporary custody of J.B. upon her release from the Cincinnati Children's Hospital.
 {¶ 15} Although no professional testimony was taken at the hearing regarding the medical needs of J.B., the court did have before it the psychological evaluation of Amber, J.B.'s mother, completed by Karla Klein Voyten, Ph.D and filed with the court in October 2005. In that evaluation, by way of background, Dr. Voyten detailed J.B.'s medical status as indicated by a member of the Cincinnati Children's Hospital staff. That evaluation indicates that J.B. would be restricted to IV nutrition for several years and would require a feeding tube. The evaluation also indicated that any custodial caregiver would need to be completely educated on the complicated procedures surrounding central line catheter care and the preparation of IV fluids, as well as the monitoring of blood, urine, and stool samples. The evaluation also noted that J.B.'s clinical status must be monitored closely so that abnormalities could be managed quickly.
 {¶ 16} In ruling on appellant's motion at the disposition hearing, the court held that BCDJFS would maintain custody of J.B. The court explained that appellant's testimony about the "potential involvement of another hospital is unsubstantiated," and stated that the Cincinnati Children's Hospital was most familiar with J.B.'s medical condition. In its judgment entry, the court noted that a legal custody placement with appellant would be inappropriate due to "distance from [the] Cincinnati Children's Hospital, no home study as of yet, concerns re: parenting."
 {¶ 17} Given the facts as presented to the trial court, we cannot say that the trial court abused its discretion in finding that it was in J.B.'s best interest to maintain legal custody with BCDJFS. J.B.'s serious medical condition requires training on the complicated procedures involved with her care. While appellant testified that she had some medical training and would be willing to take on more training to assist in J.B.'s care, her distance from the hospital familiar with J.B.'s condition was a relevant consideration for the court in determining the best interests of J.B. Further, as the court stated, appellant's testimony regarding the possibility of an outreach program through the Children's Hospital in Columbus was unsubstantiated. Without more information on appellant's ability to care for J.B. in addition to her own two children, and the ability of an outreach program to respond quickly to J.B.'s serious medical needs, the trial court did not err in denying appellant's motion for legal custody. While it is apparent that appellant loves her granddaughter and is willing to undergo the medical training that will be needed to care for J.B., we find that, under the circumstances, the court did not abuse its discretion in finding J.B.'s interests best served by maintaining legal custody with BCDJFS. Accordingly, appellant's assignments of error are overruled.
 {¶ 18} Judgment affirmed.
Powell, P.J., and Walsh, J., concur.
[1] Paternity was later established when appellant filed a Child Support Enforcement Agency Paternity Affidavit.