OPINION
JUDGMENT: Affirmed
{¶ 1} Appellant Rebecca Achauer ("mother") appeals the August 5, 2005 Judgment Entry, and the January 9, 2006 Findings of Fact and Conclusions of Law entered by the Muskingum County Court of Common Pleas, Juenile Division, which granted custody of her minor child to appellee Terry Swiger ("father").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On March 8, 2005, Muskingum County Children Services ("MCCS") filed a Complaint in the Muskingum County Court of Common Pleas, Juvenile Division, alleging Jeremy Swiger (DOB 3/22/99) was an abused and dependent child, and seeking temporary custody of the boy. Via Shelter Care Hearing Decision filed March 9, 2005, the trial court placed Jeremy in the interim protected supervision of MCCS, and ordered mother not to remove the boy from Muskingum County until further order of the court.
 {¶ 3} On March 23, 2005, father filed a Motion for Custody, requesting the trial court grant him legal custody of Jeremy. The parties filed a time waiver relative to the dispositional hearing, which was filed on April 5, 2005. MCCS filed a case plan, which the trial court approved and adopted on April 21, 2005.
 {¶ 4} The matter came on for an adjudicatory/dispositional hearing on July 20, 2005. The following evidence was adduced at the hearing.
 {¶ 5} Jennifer Myers, a case worker with MCCS, testified as to mother's history with Guernsey County Children Services and MCCS. In 2001, Guernsey County Children Services investigated allegations of physical abuse and neglect by mother against Jeremy. As the allegations were substantiated, Guernsey County worked to provide mother with the necessary services, recommending Jeremy attend speech and hearing therapy. Guernsey County also had concerns about mother's physical violence toward father on several occasions.
 {¶ 6} In January, 2003, MCCS received several reports and conducted investigations into physical abuse of Jeremy by mother. MCCS also had concerns about domestic violence in the home. MCCS was unable to substantiate the allegations, but encouraged mother to obtain speech and hearing therapy for Jeremy. In July, 2003, MCCS received another allegation of physical abuse and domestic violence. Although MCCS recommended speech therapy for Jeremy, mother failed to follow through with this recommendation. In May, 2004, MCCS investigated a report of domestic violence between mother and Andy Achauer, mother's live-in paramour. MCCS became increasingly concerned about mother's verbal abuse of Jeremy, mother's taking her anger out on the child, and mother's emotional maltreatment of him. Mother also left five year old Jeremy alone in her home with her dog.
 {¶ 7} Because of the ongoing allegations and reports, MCCS opened a case for intervention services in September, 2004. MCCS workers found Jeremy to be developmentally delayed and in need of mental health services. MCCS requested mother receive psychological services due to her assaultive behaviors and anger outbursts. MCCS also recommended parenting classes, in an effort to lessen mother's domestic violence. While the September, 2004 case was open, mother had been convicted of domestic violence against Andy Achauer. Achauer's children, Cory and Cody, reported mother screamed at Jeremy on a daily basis, and they had observed her kicking the child. Jeremy's teacher reported the child's behavior had escalated, including an incident where Jeremy hit a pregnant teacher. As a result of these ongoing reports, MCCS filed the Complaint for Dependency and Neglect in March, 2005. Myers further testified as to mother's failure to follow through and/or comply with the case plan objectives. Myers further commented father had addressed all of MCCS's concerns and successfully completed his case plan. Myers noted she had no concerns father would not comply with the recommended therapy for Jeremy. She recommended placement of Jeremy with father, but with MCCS retaining protective supervision.
 {¶ 8} Dr. Howard Beazel, who conducted the psychological evaluation of mother, testified, after reviewing her records, interviewing her on three occasions, and conducting psychological testing, he found mother to have a significant to severe personality disorder. He added mother has very poor impulse control and becomes easily angry and hostile, but soon after an episode rationalizes and minimizes it. Dr. Beazel recalled mother brought Jeremy with her to her second appointment. Dr. Beazel found Jeremy to be essentially nonverbal. On three different occasions in front of Dr. Beazel, mother slapped Jeremy for no apparent reason. Dr. Beazel did not find mother truthful, noting numerous instances in which her recollection of an event was markedly different from other reports of the same event. For instance, mother explained her recent domestic violence conviction was based upon her slapping Achauer in the face, however, the police records indicated he was bloodied and bruised and beaten up by mother.
 {¶ 9} With respect to Jeremy, Dr. Beazel explained, whenever he has seen a child of his age who is nonverbal, ninety-nine plus percent of the time such condition is due to mental retardation or autism. Dr. Beazel was left without a clear psychological explanation for why Jeremy does not talk. However, based upon the records, he believed mother's mistreatment of the boy is the most likely explanation for this. Dr. Beazel added Jeremy's receptive language skills appear to be age appropriate and consistent with at least an average IQ. Dr. Beazel concluded, based upon mother's history of instability, violence, and aggression, Jeremy will be at risk for neglect and abuse if he remains in her custody.
 {¶ 10} Andy Achauer, mother's paramour, testified he has been involved with mother for three and a half years. Mother and Jeremy live with Achauer in his home. He described their relationship as "very rocky". Mother is aggressive and angry. Achauer noted there are few peaceful days in the home, and screaming and yelling are typical occurrences. Mother does not care if the children are in or out of the house.[1]
Achauer stated something one or all of the children did is usually what precipates mother's outbursts. Achauer recalled the day mother attacked him at his place of business because he did not wait for her to go to lunch. As a result, mother was convicted of domestic violence. Achauer explained he has applied for civil protection orders on a couple of different occasions, but usually ends up dropping the issue because he feels guilty about pushing out mother. He stated he has asked mother to leave his residence and wants her to leave, however, allows her to stay is because he feels guilty about kicking out her and Jeremy.
 {¶ 11} Achauer testified mother yells at Jeremy and he has seen her push the child, but noted mother "doesn't beat on him". Tr. at 309. He added mother was constantly lying to him. When asked if mother acts appropriately with his children and if he had any concerns about her interaction with them, Achauer replied, "Yes". Achauer described how mother is physically aggressive with Lindsey, his six year old. He stated a lot of the times, the children are not misbehaving, but something sparks mother and she goes off.
 {¶ 12} Renee Achauer, Andy's ex-wife, testified she and mother have a contentious relationship, and the two have been involved in a couple of physical altercations. Mother has made a multitude of harassing phone calls to Renee. Renee recalled an incident between mother and Lindsey during the summer of 2004. Mother took Lindsey to a birthday party. While the two were in the restroom, mother "smacked her in the face". Despite Lindsey's telling mother she did not want to go in the water, mother threw the girl in when she did not know how to swim. Lindsey has told Renee and her brother, Cody, she is afraid of mother. Recently, when Renee picked up Lindsey, mother fought with Renee about the clothes Lindsey was wearing. Lindsey was in an outfit which mother had purchased for her, and mother proclaimed Renee was stealing by leaving with the child while she was wearing the outfit. Mother refused to allow Renee to leave, blocking Renee's vehicle with her vehicle.
 {¶ 13} Cody Achauer, Achauer and Renee's fourteen year old son, testified he spends at least half the week with his father. During this time, he has had the opportunity to observe mother interact with Jeremy and Lindsey. Cody stated he has seen mother strike and kick Jeremy. Cody noted mother yells and fights with everyone in the home on a daily basis. He commented mother often punishes Jeremy when the child has not done anything to deserve such. Cody expressed concerns about Jeremy's safety with mother.
 {¶ 14} Father testified about mother's violent tendencies. One summer day, Father picked up Jeremy and found the child so sunburned he (Terry) took Jeremy to the emergency room. Although Jeremy is scheduled to spend two weeks with father during the summer, mother would not allow Terry to have his second week of visitation, instead sending Jeremy to summer camp.
 {¶ 15} At the conclusion of the hearing, the trial court on the record found Jeremy was a dependent and abused child. The trial court ordered Jeremy be placed in the legal custody of his father, under the protective un-supervision of the department. The trial court granted mother supervised visitation. The trial court memorialized its decision via Entry filed August 5, 2005. Subsequently, father and Jeremy's guardian ad litem filed an ex-parte motion for supervised visitation, which the trial court granted. Counsel for mother requested findings of fact and conclusions of law. Via Entry filed August 16, 2005, the trial court ordered mother to submit proposed findings of fact and conclusions of law within ten days after her receipt of the transcript of the proceedings. Mother filed such on October 18, 2005. Although not ordered to do so, MCCS filed proposed findings of fact and conclusion of law. The trial court filed its Findings of Fact and Conclusions of Law on January 9, 2006.
 {¶ 16} It is from the August 5, 2005 Entry and the January 9, 2006 Findings of Fact and Conclusions of Law mother appeals, raising as her sole assignment of error:
 {¶ 17} "I. THE TRIAL COURT'S DECISION REGARDING CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW, THEREFORE THE TRIAL COURT'S DECISION SHOULD BE REVERSED WITH REGARD TO THE ISSUE OF CUSTODY AND CUSTODY SHOULD BE RESTORED TO REBECCA ACHAUER."
 I {¶ 18} In her sole assignment of error, mother maintains the trial court's decision granting legal custody of Jeremy to father was against the manifest weight and sufficiency of the evidence.
 {¶ 19} The juvenile court's standard of review in legal custody proceedings is by the preponderance of the evidence. In re D.R., Butler App. Nos. CA2005-06-150, CA205-06-151, 2006-Ohio-340, ¶ 9. " 'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value." Id. An appellate court reviews the legal custody determinations of the juvenile court for an abuse of discretion. Id. at ¶ 10. Abuse of discretion connotes more than an error of law or judgment; and implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. It is well recognized "the discretion a juvenile trial court enjoys in custody matters 'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the impact on the lives of the parties concerned'. "In re D.R. at ¶ 11. Because credibility issues are critical in custody cases and the demeanor and attitude of the witnesses may not translate into the record, an appellate court affords great deference to a judge's findings regarding witness credibility.Id. at ¶ 12.
 {¶ 20} In the instant action, witness after witness testified as to mother's violent nature. On a daily basis, mother engaged in verbal altercations with those around her. Mother often took her anger out on Jeremy, yelling and screaming at him. Both Andy Achauer and his son, Cody, observed mother strike Jeremy.
 {¶ 21} Of the witnesses, most notable was Dr. Howard Beazel, the psychologist who evaluated mother. Dr. Beazel found mother has a significant personality disorder with borderline traits, and as such poses a risk to children and, specifically, Jeremy. Dr. Beazel recalled one visit with mother when she brought Jeremy to the session. Dr. Beazel himself observed mother slap Jeremy three different times for no apparent reason. The psychologist found mother not to be truthful. Additionally, mother vehemently denied having any problems. In his report, Dr. Beazel stated mother has poor impulse control and becomes easily angered and hostile with almost no apparent insight into her personality problem or interpersonal problems. Dr. Beazel opined Jeremy should be removed from mother's custody based upon her history of instability, of violence and aggression. Dr. Beazel added mother never finished getting Jeremy immunized and his immunizations were overdue by almost two years. For years, mother has refused to get Jeremy speech therapy. Dr. Beazel felt certain Jeremy would be at risk for neglect and abuse if he remained in mother's custody.
 {¶ 22} Based upon the foregoing and the entire record in this matter, we find the trial court did not abuse its discretion in granting legal custody of Jeremy Swiger to father.
 {¶ 23} Mother's sole assignment of error is overruled.
 {¶ 24} The judgment of the Muskingum County Court of Common Pleas is affirmed.
By: Hoffman, P.J. Farmer, J. and Boggins, J. concur
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellant.
Hoffman, P.J. Farmer, J. and Boggins, J.
[1] Achauer has three children from another marriage who are at the home on a regular basis.