OPINION
{¶ 1} Defendant-appellant Hollie Washington appeals the March 2, 2006, decision of the Knox County Court of Common Pleas, Juvenile Division, which found that temporary custody of the appellant's two minor children, Stefon Washington and Lauranne Washington, should be granted to the children's maternal grandmother. Plaintiff-appellee is the Children Services Unit of the Knox County Department of Job and Family Services ("CSU/KCDJFS").
 STATEMENT OF FACTS AND LAW {¶ 2} On August 2, 2005, Ann Fischer, Social Worker with CSU/KCDJFS, filed two complaints with the Knox County Court of Common Pleas, Juvenile Division, one on behalf of Stefon Washington, being Case No. 205-2032, and the other on behalf of Lauranne Washington being Case No. 205-2023. Appellant Hollie Washington is the father of Stefon and Lauranne Washington. Tammy Washington is the children's mother.[1] The complaints alleged that Stefon and Lauranne were neglected due to the fact that they lacked "adequate parental care because of the faults or habits of" the appellant, and that they were dependent due to the fact that they lacked "proper care or support by reason of the mental or physical condition of" the appellant. In addition, the complaints alleged that the "condition or environment of the home was such as to warrant the state, in the interests of the minor children, to assume guardianship". The complaints sought either protective supervision, or that temporary custody of the children be granted to their maternal grandmother, Doreena Goines, or some other suitable relative.
 {¶ 3} A shelter care hearing was held on August 2, 2005, at which time the magistrate placed Stefon and Lauranne in the pre-dispositional temporary custody and shelter care of the CSU/KCDJFS. The CSU/KCDJFS placed the minor children with Doreena Goines.
 {¶ 4} An adjudicatory hearing was held on October 12, 2005, at which time the trial court heard testimony and received the following evidence concerning the allegations contained in the complaints. On August 1, 2005, the Mount Vernon Police Department received a "man with a gun" call. Officer James DeChant responded to the call. Officer DeChant discovered the appellant inside a small room of a home. Lauranne Washington was in the room with appellant, and Stefon Washington was upstairs. Appellant became very belligerent with Officer DeChant, as well as the other responding officer. When the officers attempted to gather information from appellant, he became physically violent with the officers. Officer DeChant testified that appellant, with whom DeChant had previous contact, did not appear to be himself.
 {¶ 5} When Officer DeChant and the other responding officer attempted to subdue the appellant during the August 1st call, he resisted. Officer DeChant located a loaded nine millimeter handgun in the room under a recliner approximately five feet from where Lauranne was sitting on the couch. The handgun contained four rounds, one in the chamber, which could have discharged immediately upon pulling the trigger, and three in the magazine. Appellant was placed under arrest and charged with disorderly conduct, intoxication, resisting arrest and aggravated menacing.[2] The CSU/KCDJFS was called to the scene, and, as set forth supra, Stefon and Lauranne were placed with their maternal grandmother, Deanna Goines.
 {¶ 6} The evidence presented at the October 12, 2005, adjudicatory hearing also showed that the appellant often heard voices threatening him with physical harm. Previous police encounters with appellant involved complaints by appellant that the children's mother and her boyfriend were threatening to kill appellant. On one previous occasion, the Mount Vernon Police Department received a call that appellant was screaming out the back of his home across the yard while brandishing a gun, telling the children's mother and her boyfriend to leave him alone. The officer who responded to said call testified that appellant pointed out the window while talking with the officer, and asked the officer if he could see the individuals threatening him and hear the threats. The officer heard no voices, nor did he observe anyone outside the window.
 {¶ 7} The trial court determined at the conclusion of the adjudicatory hearing that the appellant's erratic behavior constituted sufficient unstable behavior so as to warrant the court assuming guardianship of Stefon and Lauranne.[3]
 {¶ 8} A dispositional hearing was held on October 26, 2005, at which time appellee CSU/KCDJFS submitted various exhibits. Some of the exhibits documented an earlier dependency case involving the appellant and his minor children, and were submitted with the stipulation that the appellant complied with the case plan in the earlier case and the children were returned to him. In addition, a psychological evaluation obtained in connection with the earlier dependency case was also admitted into evidence. The trial court continued the dispositional hearing and ordered the appellant to submit to an updated psychological evaluation. Temporary custody of the minor children was formally granted to the children's maternal grandmother pending resumption of the dispositional hearing.
 {¶ 9} The dispositional hearing resumed on January 12, 2006, at which time appellee CSU/KCDJFS advised the court that the appellant failed to appear for the updated psychological evaluation. When asked by the court whether he would be willing to submit to the updated psychological evaluation, appellant replied, "I'm going for a Federal appeal," "I'm going special Federal appeals. And then I was going to ask the Federal Judge for a class action lawsuit." When the court advised appellant that it was his right to file an action in federal court, but that the issues concerning the minor children still had to be addressed, appellant replied, "And that's why I need the Court's decision since the State not involved. With all my parents' rights been violated. And I know I'm an enemy of the State, I know everybody who's involved, what you all doing. I know everything's going on here. So it isn't like I'm in the dark. (INAUDIBLE). You ain't not pulling over my head."
 {¶ 10} The CSU/KCDJFS then requested that temporary custody of the minor children remain with Ms. Goines. Appellant objected, stating that he believed that the children should be returned to him, or, in the alternative, placed in foster care. The court then took testimony from the children's mother, Tammy Washington, who is unable to take the children because she does not have adequate housing. Ms. Washington testified that she baby-sits the children while Ms. Goines is at work, and that during this time Stefon appears afraid of her and begs her not to kill him.
 {¶ 11} The appellant also testified as follows:
 {¶ 12} "Q. But I want to back up, I think you said in answer to that question, for the second time on the record today, that you are an enemy of the State.
 {¶ 13} "A. Yeah.
 {¶ 14} "Q. What do you mean by that?
 {¶ 15} "A. That [sic] violating my rights, way overboard. You all make accusations and stuff. They got people up there yelling, Tammy, Tabby, yelling sexual threats in the summertime.
 {¶ 16} "Q. The State has people doing those things?
 {¶ 17} "A. Yeah.
 {¶ 18} "Q. Why do you think —
 {¶ 19} "A. Looks like — I hear — I hear them every day.
 {¶ 20} "Q. Where do you hear them?
 {¶ 21} "A. I hear them at 7 — 711-14B. I've got it — I wrote it on a map — (INAUDIBLE) — by heart — 711-13B and C. That — 7 — 714B, the whole apartment complex.
 {¶ 22} "Q. Now, how do you hear them? Are they standing there yelling at you?
 {¶ 23} "A. Transmitters, transmitters. Sometimes in the summertime they — (INAUDIBLE) — in the day they come over by my house real late at night talking about we going to — I'm going to kill you.
 {¶ 24} "Q. Now, who is saying this? This is Tammy and her friends?
 {¶ 25} "A. Tammy and her family, my family, Luis Lamar, Melton Lamar, Tony Lamar, Eva Lamar, Craig McCoy, Bernice King, Lawrence King.
 {¶ 26} "Q. Are these people — these people are not members of law enforcement or Children Services?
 {¶ 27} "A. They went to — I went to school with them. Who she having sex with — having sexual acts with Ellie.
 {¶ 28} "Q. I'm wondering why you think the State is involved in this? Why you think that the-
 {¶ 29} "A. Because of Ann Fisher — Ann Fisher's mouth. I hear Ann Fisher's mouth talking about Hollie this — I hate you, nigger this, nigger that. I hear her voice.
 {¶ 30} "Q. You hear that by transmitter?
 {¶ 31} "A. Yeah, transmitters. They can see in my house everything that I do, everything.
 {¶ 32} "Q. So you believe that there are cameras and transmitters in your house?
 {¶ 33} "A. Yeah, yeah, yeah. You all involved.
 {¶ 34} "Q. Who do you think —
 {¶ 35} "A. Art — now, Art is a [sic] informant. I don't know if he's on the city or state level or drug enforcement agency. I know Tony. Tony's a big drug dealer with Art is the informant that told on Tony. And I think the guy Steve, he's from Indianapolis, came up to Ohio, plus Tony done seven years in the prison. Lauranne's involved.[4] She's having sex with Tony. I know all of them. Yeah. Got you. Speedy, they all — Tammy — (INAUDIBLE) — and stuff. She ran a lot of them in prison too.
 {¶ 36} "Q. Who do you believe has put cameras or microphones in your home?
 {¶ 37} "A. Well, well, they had some kind of — some kind of piece, but it burnt up in my home. Some kind of like metal piece. But they got them next door. They got them every apartment.
 {¶ 38} "Q. Who do you think — who is they? Who do you think is doing that?
 {¶ 39} "A. You all, you all, you all, you all." See, Transcript of January 12, 2006, dispositional hearing at pp. 41-49.
 {¶ 40} Testimony was also received from Julie Pelton, the CSU/KCDJFS case worker assigned to the case. Ms. Pelton testified that while appellant had been able to parent the children in the past, the events from July, 2005 to the time of the hearing raised concerns regarding the appellant's mental stability and, consequently, concerns regarding the safety of the children while in his care. Therefore, it was her opinion that the children should remain in the temporary custody of Ms. Goines, but that professional day care should be arranged for the time period during which Ms. Goines had to go to work.
 {¶ 41} The trial court issued a judgment entry on March 2, 2006, in which it held that it was in the best interests of the children to not be placed with their mother, Ms. Washington, as she did not have adequate housing. The court also held that it was also not in the best interests of the children to be returned to appellant, as the events leading up to the adjudication/dispositional hearings, as well as appellant's testimony at the January 12, 2006 hearing, raised concerns about his mental stability and his ability to parent the children. Further, the trial court held that it was not in the best interests of the children to be removed from their maternal grandmother, Deanna Goines. Accordingly, the trial court ordered that the children remain in the temporary custody of Ms. Goines, and ordered further that Ms. Goines find appropriate, professional day care in which to place the children while she is working. Finally, the March 2, 2006, judgment entry contained a case plan for the children.
 {¶ 42} The appellant appeals the March 2, 2006, judgment of the trial court, setting forth the following assignment of error:
 {¶ 43} "THE TRIAL COURT ERRED WHEN IT GRANTED TEMPORARY CUSTODY OF STEFON WASHINGTON TO DOREENA GOINES, HIS MATERNAL GRANDMOTHER, INSTEAD OF HIS NATURAL FATHER, HOLLIE WASHINGTON."
 {¶ 44} Appellant argues that the trial court erred in granting temporary custody of the minor children with their maternal grandmother. We disagree.
 {¶ 45} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, 1982 WL 2911. Accordingly, judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Constr. (1978), 55 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 46} The case sub judice involves an appeal of a judgment following a dispositional hearing. Juv. R. 34, which provides for dispositional hearings, states in pertinent part:
 {¶ 47} "(A) Scheduling the hearing
 {¶ 48} "Where a child has been adjudicated as an abused, neglected, or dependent child, the court shall not issue a dispositional order until after it holds a separate dispositional hearing. The dispositional hearing for an adjudicated abused, neglected, or dependent child shall be held at least one day but not more than thirty days after the adjudicatory hearing is held. . . .
 {¶ 49} "(B) Hearing procedure
 {¶ 50} "The hearing shall be conducted in the following manner:
 {¶ 51} "(1) The judge or magistrate who presided at the adjudicatory hearing shall, if possible, preside;
 {¶ 52} "(2) Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence;…
 {¶ 53} "(D) Dispositional Orders
 {¶ 54} "Where a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 55} "(1) Place the child in protective supervision;
 {¶ 56} "(2) Commit the child to the temporary custody of a public or private agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or approved foster care;…
 {¶ 57} In addition, R.C. 2151.353 addresses dispositional hearings and provides in part:
 {¶ 58} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 59} "(1) Place the child in protective supervision;
 {¶ 60} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home, or in any other home approved by the court;…
 {¶ 61} The appellant argues that the degree of proof required to grant temporary custody to someone other than a parent is clear and convincing. The Ohio Supreme Court has defined the term clear and convincing in Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, ¶ 3 of the syllabus, as follows: "[T]hat measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."
 {¶ 62} The appellee argues that the standard of proof in the within case is preponderance of the evidence, which means evidence that is more probable, more persuasive, or of greater probative value. See, In reDR, Butler App. Nos. CA 2005-06-150, CA 2005-06-151, 2006-Ohio-340, at ¶ 9.
 {¶ 63} We need not reach the question of which standard of proof applies, as the evidence in the case before us overwhelmingly supports the trial court's decision to place Stefon and Lauranne Washington in the temporary custody of their maternal grandmother. The evidence exceeds even that amount necessary to support the decision of the trial court by clear and convincing evidence.
 {¶ 64} The appellant's sole assignment of error is overruled, and the judgment of the Knox County Court of Common Pleas, Juvenile Division, is therefore affirmed.
Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] The two are either separated or divorced, and the children have been cared for by appellant, as Ms. Washington has no home in which to care for the children.
[2] These charges were later dismissed. The trial court issue adjudicatory hearing.
[3] The trial court issued a judgment entry on November 3, 2005, memorializing its findings at the adjudicatory hearing.
[4] The fact that appellant believes his daughter is also involved in the conspiracy against him raises even greater concern about her safety while in his care.