[Cite as *In re A.C.*, 2019-Ohio-3354.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| A.C. AND E.C. | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | Case Nos. 18-CA-0113 |
| | : | 18-CA-0114 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeals from the Court of Common
Pleas, Juvenile Division, Case Nos.
F2016-0094 and F2016-0095

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     August 20, 2019

APPEARANCES:

For Appellants                                      For Appellee

MARY LOU RANNEY                    JAMES CHOI
One South Main Street                  20 South Second Street
P.O. Box 484                                 Fourth Floor
Utica, OH  43080                            Newark, OH  43055

TONIA R. WELKER
22 East Main Street
P.O. Box 598
Centerburg, OH 43011

SUSAN M. HARD
6740 Avery-Muirfield Drive, Suite B
Dublin, OH  43017

*Wise, Earle, J.*

{¶ 1}   Appellants, B.P. and A.P., paternal grandparents, appeal the November 21, 2018 judgment entries of the Court of Common Pleas of Licking County, Ohio, Juvenile Division, denying their motions for legal custody and terminating the parents' parental rights and granting permanent custody of the children to appellee, the Licking County Department of Job and Family Services.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On February 11, 2016, appellee filed complaints for temporary legal custody of E.C. born in March 2011 (Case No. F2016-0094) and A.C. born in October 2015 (Case No. F2016-0095), claiming the parents were unable and/or unwilling to provide adequate parental care, supervision, and support to the children.  Parents of the children are mother T.P. and father J.C.  By orders filed same date, temporary custody of the children was granted to appellee.

{¶ 3}   An adjudicatory hearing was held on April 8, 2016.  By judgment entries filed same date, the trial court found the children to be dependent and ordered temporary custody of the children to remain with appellee.

{¶ 4}   On January 11, 2017, appellee filed motions for permanent custody due to the parents being unable to make any significant progress on the case plans.

{¶ 5}   On February 8, 2017, the maternal grandparents of the children filed motions for legal custody.

{¶ 6}   On February 24, 2017, appellants, the paternal grandparents of the children, filed amended motions to intervene and motions for legal custody.

{¶ 7}   A hearing was held on July 12, 2017.  The parties agreed to allow the parents more time to work on their case plans.  As a result, by entries filed July 12, 2017, the trial court granted appellee an extension of temporary custody.

{¶ 8}   On October 30, 2017, appellee filed second motions for permanent custody due to the parents' inability to complete the case plans.

{¶ 9}   The motions for legal custody were heard before a magistrate on May 1 and 3, 2017, and January 19, 2018.  The motions for permanent custody were heard before a magistrate on January 30, 2018.  By decisions filed October 24, 2018, the magistrate denied the motions for legal custody and granted appellee's motions for permanent custody.

{¶ 10} On October 31, 2018, appellants requested an enlargement of time to prepare transcript and file objections.  By orders filed November 6, 2018, the trial court ordered appellants to file preliminary objections no later than November 9, 2018, with final objections filed within twelve days of the filing of the transcript.  Preliminary objections were not filed by the due date.  On November 14, 2018, appellants again requested an enlargement of time.

{¶ 11} By judgment entries filed November 21, 2018, the trial court approved and adopted the magistrate's decisions and granted permanent custody of the children to appellee.

{¶ 12} Appellants filed an appeal in each case and this matter is now before this court for consideration.  The assignments of error are identical and are as follows:

I

{¶ 13} "THE TRIAL COURT ERRED BY NOT CONDUCTING A HEARING ON THE PERMANENT CUSTODY MOTION, AS REQUIRED BY R.C. 2151.414 AND JUV.R. 37(A), AND THUS LICKING COUNTY JOB AND FAMILY SERVICES HAS FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY IS THE CHILDREN'S BEST INTERESTS."

II

{¶ 14} "LICKING COUNTY JOB AND FAMILY SERVICES FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY, A 'REMEDY OF LAST RESORT,' WAS IN THE CHILDREN'S BEST INTERESTS, WHILE APPROPRIATE RELATIVE PLACEMENT THROUGH THE PATERNAL GRANDPARENTS WAS AVAILABLE IN THE CHILDREN'S BEST INTERESTS."

I

{¶ 15} During oral argument held on June 20, 2019, appellants withdrew their first assignments of error; therefore, it will not be considered.

{¶ 16} Assignments of Error I are withdrawn.

II

{¶ 17} In their second assignments of error, appellants claim the trial court erred in determining permanent custody was in the best interest of the children when appropriate relative placement was available.  We disagree.

{¶ 18} First, we note these appeals are not the parents appealing the grant of permanent custody to appellee.  What we have before us are appeals by the paternal grandparents of the trial court's denials of their motions for legal custody.

{¶ 19} We further note appellants never filed objections to the magistrate's decisions. Juv.R. 40(D)(3)(b)(iv) states the following:

Waiver of Right to Assign Adoption by Court as Error on Appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

{¶ 20} Although appellants have failed to make claims of plain error, we will review the matter under a plain error analysis. Civil plain error is defined in *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus, as "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." The *Goldfuss* court at 121, explained the following:

The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error

complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

{¶ 21} In *In re A.C.,* 12th Dist. Butler No. CA2006-12-105, 2007-Ohio-3350, ¶14 and 15, our colleagues from the Twelfth District succinctly stated the following:

Upon adjudicating a child as abused, neglected, or dependent, a juvenile court may award legal custody of a child to a parent or a nonparent upon a timely motion. R.C. 2151.353(A)(3). In making a custody decision, the best interest of the child is to be applied. *In re Brown* (2001), 142 Ohio App.3d 193, 198. Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, a juvenile court's standard of review in legal custody proceedings is by the preponderance of the evidence. *In re Nice* (2001), 141 Ohio App.3d 445, 455; *In re A. W.-G.,* Butler App. No. CA2003-04-099, 2004-Ohio-2298. A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *In re A. W.-G.*at fn. 1.

A juvenile court's custody decision will not be reversed absent an abuse of discretion. *Id.* at ¶ 6. The discretion granted to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through

observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Id.,* quoting *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. Thus, an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility. *In re D.R.,* Butler App. Nos. CA2005-06-150 and CA2005-06-151, 2006-Ohio-340, ¶ 12.

{¶ 22} Appellants presented the testimony of five individuals in support of their motions for legal custody.

{¶ 23} B.G., Jr. and J.G., appellants' son-in-law and daughter, respectively, testified to appellants' good character and their bond with the children. T. at 195, 198, 202, 205, 215, 238.

{¶ 24} B.P., appellant step-grandfather, testified to filing for dissolution from A.P., appellant grandmother, five months after they got married in 2008 and then filing for divorce in 2012. T. at 254. B.P. testified he was very stressed at the time, paying all the bills and helping to raise the parties' children. T. at 254-255. They participated in counseling and their marriage is "stronger than ever now," although he admitted to still having problems like "every couple does." T. at 255-256. He stated they have not had any significant problems since 2012, and they could provide for the grandchildren. T. at 256-257. When A.P. had foot surgery in April 2016, they asked appellee for childcare help, but the caseworker, Kathleen Spahr, told them to return the children to the agency. T. at 263-264. B.P. stated they asked the agency and others for assistance from time to time because "we needed a break," a respite. T. at 265. He testified the agency "wouldn't

give us pretty much any help at all." *Id.* The children were placed with appellants from February 2016 until May 2016. T. at 270. B.P. did not permit the children's parents to fight in front of them or permit the parents to do drugs in his home. T. at 278-279. Appellants had to cancel two home visits by the agency because of sickness. T. at 282. In 2013, B.P. was convicted of "nonviolent verbal domestic" (disorderly conduct domestic) involving A.P. T. at 289-292. He stated the agency was aware of his history when it placed the children with him in February 2016. T. at 301-302, 345. B.P. stated he was willing to get "[p]oked, prodded, anything they want to do" to get legal custody of the children. T. at 615-616. On cross-examination, B.P. stated he would follow any trial court orders regarding visitation between the children and their father which is his step-son. T. at 310. When questioned about the 2013 verbal domestic incident, B.P. admitted that he "brushed the side of her face" with a beer bottle. T. at 324.

{¶ 25} S.B., A.P.'s mother and B.P.'s mother-in-law, testified to appellants' good relationship with each other and with the children. T. at 355, 358-359.

{¶ 26} A.P., appellant grandmother, testified to her stable relationship with B.P. and their strong bond with the children. T. at 394-396, 401, 406. She agreed that all of the grandparents of the children were supportive of each other. T. at 413. She explained she asked the agency for childcare assistance because she was having difficulties with her foot surgery. T. at 416-417. Her physical health was good at the time of the hearing, although she has been diagnosed with depression and is on medication. T. at 420, 472, 474. She stated she missed two home visits with the agency because of sickness in the home. T. at 422. She felt the agency was intentionally trying to break their bond with the children. T. at 437. She never told the agency that she was homeless. T. at 427. She

would follow any trial court orders regarding visitation between the children and their parents. T. at 451-452, 463. On cross-examination, A.P. agreed that B.P. hit her in the temple with a beer bottle during the 2013 domestic incident. T. at 483. During her testimony, the trial court admonished B.P. for shaking his head and signaling with his hands to which B.P. responded, "I'm just scratching." T. at 488, 522-523. The trial court warned him "[o]ne more time, you're out of the building." T. at 488.

{¶ 27} By the time of the third hearing on January 19, 2018, appellants had started foster care classes and were in the foster-to-adopt program. T. at 577.

{¶ 28} Kathleen Spahr, the ongoing caseworker for the family, testified she became involved with the case in March 2016, following the agency's intervention in February 2016. T. at 629. At the time, the children had been placed with appellants on an emergency basis. T. at 629-630. Ms. Spahr explained following an emergency placement, the agency conducts a home study. T. at 630. Some early concerns were B.P.'s 2013 incident and the need for counseling and possible substance abuse counseling. T. at 636. The home study was never completed because of the "disruption in the placement in May 2016." *Id.* On May 20, 2016, Ms. Spahr received a voicemail from A.P. indicating "she couldn't handle the children anymore." T. at 644. When Ms. Spahr called A.P. back, A.P. stated she needed help, and informed Ms. Spahr that B.P. was cheating on her and she was homeless. T. at 644-645. A.P. stated B.P. kicked her and the children out of the house " 'because they're not his grandchildren, they're mine, and I'm homeless and I can't handle the [children] anymore.' " T. at 645. Ms. Spahr testified that A.P. sounded "escalated" and "frantic." *Id.* Ms. Spahr suggested getting some help from her adult daughters, but A.P. indicated they would not be able to help. T.

at 645-646. Ms. Spahr told A.P. " ' Okay. You know, if you can't do it, you need to bring the kids over here.' " T. at 646. During the same telephone call, Ms. Spahr spoke with one of A.P.'s adult daughters who confirmed she could not help A.P. care for the children. T. at 647. Ms. Spahr then informed the daughter if she could not care for the children and A.P. could not care for the children and was homeless, then the children needed to be returned to the agency before noon. *Id.* When A.P. arrived to drop off the children, Ms. Spahr was trying to determine if this was a permanent move or whether A.P. needed some time to figure out where she would be staying. T. at 654. Ms. Spahr asked A.P. and her daughter if other family members were available and was told "no." *Id.* Ms. Spahr attempted to problem solve, "but there wasn't an option." T. at 709. A.P. never mentioned that her foot surgery was an issue in caring for the children. T. at 702. When Ms. Spahr interviewed the oldest child, the child stated appellants had been fighting "with words." T. at 656. Ms. Spahr believed the child had a bond with A.P. T. at 712. Three days later, B.P. called Ms. Spahr and accused her of coming and taking the children from A.P. "with the police." T. at 658-659. The police were never involved. T. at 659. Appellants have never taken accountability for the placement disruption. T. at 660. Ms. Spahr opined it would not be in the best interest of the children to be placed in the legal custody of appellants because she had concerns about the history of domestic violence or "the history of the troubles in their relationship." T. at 669. She was concerned "about the inconsistencies in what they've told to me, what they've told to the Court, the stability within their family, and the fact that when we had children placed there they returned them." *Id.* The children being removed from appellants' care was "directly the result of

her [A.P.] calling me up and saying she couldn't do it anymore and that she was homeless."  T. at 707.

{¶ 29} In reports filed January 19, 2018, the guardian ad litem recommended that the trial court deny the motions for legal custody and grant the motions for permanent custody.

{¶ 30} In his decisions filed October 24, 2018, the magistrate denied appellants' motions for legal custody, finding he had "grave concerns" about the stability of their home given the evidence presented about their relationship, the two filings to end the marriage, and the 2013 domestic incident.  Although appellants talked to a counselor and their pastor, A.P. called the agency in May 2016 "speaking of ending the marriage and of an affair" by B.P.  The magistrate noted that appellants denied this call had occurred. Appellants insisted Ms. Spahr "removed the children from their home with threat of law enforcement involvement."  The magistrate stated he did not believe appellants' version of events, and found Ms. Spahr's testimony to be credible.  Beyond the state of the relationship, the magistrate had concerns about B.P. being a self-described "hot head." Citing several examples, the magistrate found B.P. "does, indeed have issues with his anger, and frankly appears to be someone who is extremely controlling."  The magistrate concluded that legal custody to appellants would not be in the children's best interest.  He found the children were doing well in the foster home and the foster parents were interested in adoption.

{¶ 31} By judgment entries filed November 21, 2018, the trial court approved and adopted the magistrate's decisions.  The trial court stated after independently reviewing the entire record, the record contains "substantial, credible evidence which supports the

magistrate's findings as set forth in his decision."  The trial court did not find "any errors of law or other defects prejudicial to the rights" of appellants, and was "firmly convinced that the magistrate's findings and conclusions of law were correct."

{¶ 32} Affording deference to the findings of the magistrate and the trial court regarding witnesses' credibility, we find competent, credible evidence was presented to support the trial court's determinations that granting legal custody of the children to appellants was not in the children's best interest.  We do not find anything in the record to rise to the level of plain error.

{¶ 33} Upon review, we find the trial court did not abuse its discretion in denying appellants' motions for legal custody.

{¶ 34} Assignments of Error II are denied.

{¶ 35} The judgments of the Court of Common Pleas of Licking County, Ohio, Juvenile Division are hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.

EEW/db 81