OPINION
{¶ 1} Appellant, Danyelle P., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her first-born daughter, A.W.-G., to the child's paternal grandmother, appellee Margie G.
 {¶ 2} A.W.-G. was born in July 1998. She was removed from appellant in May 1999, and again in June 1999. On May 26, 1999, the Butler County Children Services Board ("BCCSB") filed a dependency and neglect complaint alleging substance abuse by appellant, instability and hazardous conditions of appellant's housing, appellant leaving A.W.-G. with various relatives and friends for varying lengths of time, appellant's failure to treat A.W.-G.'s medical condition, and appellant's prior involvement with the Warren County Children Services Board.
 {¶ 3} A.W.-G. was adjudicated dependent on August 9, 1999. The allegations of neglect were withdrawn without prejudice by BCCSB. A case plan adopted at the adjudication hearing required appellant to undergo a substance abuse assessment and treatment, random drug screens, and psychological examination and counseling, and to maintain stable employment and housing. On November 8, 1999, the juvenile court awarded temporary custody of A.W.-G. to her paternal grandmother. A.W.-G. was 16 months old at the time and has remained with her grandmother since then.
 {¶ 4} Legal custody motions were subsequently filed on behalf of the grandmother by BCCSB and the guardian ad litem, but were continued in an attempt to allow appellant to show stability. In August 2001, appellant moved for legal custody of A.W.-G. The grandmother eventually retained her own counsel and in December 2001 moved for legal custody of A.W.-G. Custody hearings were held from March to September 2002. BCCSB recommended that A.W.-G. be placed in the legal custody of appellant. The guardian ad litem and the child's father recommended that A.W.-G. be placed in the legal custody of her grandmother. On January 3, 2003, and again by amended order on February 4, 2003, the juvenile court granted legal custody of A.W.-G. to the grandmother, and granted appellant visitation. Appellant's objections to the juvenile court's decision were subsequently overruled.
 {¶ 5} Appellant now appeals and raises as her sole assignment of error that "the trial court's decision to grant the paternal grandmother permanent custody is not supported by clear and convincing evidence."
 {¶ 6} Upon adjudicating a child as abused, neglected, or dependent, a juvenile court may award legal custody of the child to a parent or to a nonparent. R.C. 2151.353(A)(3). In making a custody decision, the best interest of the child is to be applied. In re Brown (2001), 142 Ohio App.3d 193, 198. A juvenile court's custody decision will not be reversed absent an abuse of discretion. Id. The discretion granted to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 7} We first note that appellant is mistaken in her belief that the juvenile court's standard of review is clear and convincing evidence. "[L]egal custody where parental rights are not terminated is not as drastic a remedy as permanent custody."In re Nice, 141 Ohio App.3d 445, 455, 2001-Ohio-3214. Appellant retains residual parental rights regarding A.W.-G. such as visitation. See R.C. 2151.011(B)(19). "As such, the trial court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence."[1] Id. See, also, In re Law, Tuscarawas App. No. 2003 AP 06 45, 2004-Ohio-117.
 {¶ 8} Likewise, the juvenile court is mistaken in its belief that it was bound by In re Perales (1977), 52 Ohio St.2d 89, and therefore could not award legal custody of A.W.-G. to a nonparent such as the paternal grandmother without first finding appellant unsuitable.
 {¶ 9} In Perales, the Ohio Supreme Court stated that "[i]n an R.C. 2151.23(A)(2) child custody proceeding between a parent and non-parent, the hearing officer may not award custody to the non-parent without first making a finding of parental unsuitability, that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Id. at syllabus. See, also, In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208 (in child custody case arising out of parentage action between natural parent of child and nonparent, trial court must make parental unsuitability determination on the record before awarding legal custody of child to nonparent).
 {¶ 10} Neither Perales nor Hockstok involved children who were previously adjudicated abused, neglected, and/or dependent and whose custody was being determined by R.C. 2151.353. Rather, these cases involved private custody matters between presumptively fit parents and nonparents, and were expressly limited to original parentage actions brought under R.C.2151.23(A)(2). In re D.R., 153 Ohio App.3d 156, 2003-Ohio-2852, ¶ 10.
 {¶ 11} In the case at bar, the custody hearings were held to determine whether the disposition of A.W.-G., who had already been adjudicated a dependent child and placed in the temporary custody of the grandmother via BCCSB, should be changed to place the child in the legal custody of either the mother or the grandmother. Such a proceeding is governed by an entirely different statutory scheme from R.C. 2151.23(A)(2), which governed the legal custody motions at issue in Perales andHockstok. Id. at ¶ 11. In addition, the supreme court has never extended the "parental unsuitability" requirement of Perales to legal custody matters where the children have previously been adjudicated abused, dependent, or neglected pursuant to R.C. Chapter 2151. Id. at ¶ 12.
 {¶ 12} It therefore follows that the "requirement ofPerales that a trial court first find a parent unsuitable before awarding legal custody of the child to a nonparent does not apply to dispositional hearings following an adjudication that the child is abused, dependent, or neglected." Id. at ¶ 11. See, also, In re C.F., Cuyahoga App. No. 82107, 2003-Ohio-3260;In re Gales, Franklin App. Nos. 03AP-445 and 03AP-446, 2003-Ohio-6309; and In re McQuitty (May 5, 1986), Warren App. No. CA85-04-016.
 {¶ 13} We now consider whether granting legal custody of A.W.-G. to her grandmother rather than appellant was in the child's best interest.
 {¶ 14} The grandmother was granted temporary custody of A.W.-G. in November 1999. The record shows that A.W.-G. is well-adjusted in her grandmother's home and that the two have developed a tight and strong bond. While in her grandmother's care, A.W.-G. has learned her colors, her "A, B, C's," how to dress herself and eat with proper utensils, and has become toilet trained. Appellant testified that A.W.-G. has a "wonderful relationship" with her grandmother and that the grandmother has done "a wonderful job" with A.W.-G. In May 2001, appellant married Brian P. They have two young children. While in her grandmother's care, A.W.-G. has maintained a positive relationship with appellant through visitation. The record shows that appellant loves A.W.-G., that the two have a strong bond, and that A.W.-G. interacts well with her stepfather and her siblings. Nevertheless, A.W.-G. does not always want to visit appellant and usually exhibits some behavioral problems, such as kicking, throwing fits and tantrums, and refusing to mind, upon her return from visiting appellant. It usually takes a couple of days for A.W.-G. "to get back into the groove" after visits.
 {¶ 15} Appellant argues that the court ignored (1) the fact that she completed her case plan, (2) BCCSB caseworkers' testimony that they had no concern about appellant's ability to care for A.W.-G., and that changes in employment and housing were acceptable to them, and (3) that although she has not been employed regularly, her husband has been able to financially provide for their family. However, while "a parent may show that her parenting skills have improved and that the circumstances causing the child's removal from the home have also improved, such a showing does not necessarily demonstrate that placement in the mother's care is in the child's best interest." In reFanizzi (Oct. 30, 1996), Summit App. No. 17706, 1996 WL 625250, at *2.
 {¶ 16} In its decision, the juvenile court noted that for the most part appellant had completed her case plan. However, "[t]he biggest area for concern has been her ability to financially provide for [A.W.-G.] and to maintain stable housing. She has appeared stable at different points during the pendency of this case, only to testify that things changed right after the previous court's hearing. This case had testimony over several months, during which time [appellant's] housing and employment status have changed numerous times.
 {¶ 17} "At different times [appellant] testified that she intended to seek employment or was employed. However, she testified at other times that she did not need to work because her husband was able to provide for she and the children without her being employed. When she has been employed, it has been very short in duration. During the course of the trial it became clear that [appellant] has accepted financial assistance from other family members and has been evicted from at least one residence. Throughout this case, [appellant] has returned to her parents' residence numerous times when she has been without independent housing.
 {¶ 18} "During the time A.W.-G. spends with her mother there have been issues of the care [the child] receives. The [grandmother] and the child's babysitter have noted on several occasions a severe rash [in the vaginal area] when the child returns. The rash is due to hygiene conditions which arise due to a physical condition the child has and the severe rash has required medical attention. The rash has occurred in spite of numerous discussions and written instructions to [appellant] regarding the child's hygiene to keep the rash from occurring or to properly treat a mild rash. The child does not experience the severe rash when in the care of anyone except [appellant]. In addition, when [A.W.-G.] has been ill, there has been more than one occasion when [appellant] has not administrated medication as scheduled or as prescribed in spite of written instructions. [Appellant] has not been able to provide a consistent adequate level of care for [A.W.-G.'s] medical issues.
 {¶ 19} "* * *
 {¶ 20} "Based upon the foregoing findings, it is clear, by a preponderance of the evidence, that [A.W.-G.'s] placement with [her grandmother] is in her best interest. While this court has no doubt that [appellant] loves her child, the level of stability, and more accurately, the lack thereof, of [appellant] and her family is the deciding factor. In the time this case was open, [appellant] continuously demonstrated she could not maintain stability with respect to her housing and her ability to provide for [the] children [she had with her husband] through her own employment or her husband's. [Appellant] has repeatedly failed to provide [A.W.-G.] with the level of hygiene and care necessary to protect [A.W.-G.'s] health and well-being."
 {¶ 21} Upon thoroughly reviewing the record, we find that it clearly supports the juvenile court's findings. The juvenile court also had the benefit of the report of the guardian ad litem. We therefore find that the juvenile court did not abuse its discretion in granting legal custody of A.W.-G. to her paternal grandmother. There was competent, credible evidence supporting the juvenile court's determination that granting legal custody of A.W.-G. to her paternal grandmother was in the child's best interest. Appellant's assignment of error is overruled.
 {¶ 22} The judgment is affirmed.
Judgment affirmed.
Powell and Valen, JJ., concur.
[1] Clear and convincing evidence is "that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish `beyond a reasonable doubt' in criminal cases. It is that quantum of evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Williams, Franklin App. Nos. 01AP-867 and 01AP-868, 2002-Ohio-2902, ¶ 9. By contrast, preponderance of the evidence is simply "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." Black's Law Dictionary (6th Ed. 1998) 1182.