OPINION
{¶ 1} Plaintiff-appellant, Shawn H., appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, denying her motion for legal custody of two nieces (M.R. and A.C.) and a nephew (C.R.).
 {¶ 2} Beth C. is the mother of M.R. (born in September 2001), C.R. (born in August *Page 2 
F2003), and A.C. (born in January 2005). Appellant is the children's maternal great-aunt. On March 18, 2005, Union Township police officers went to Beth's apartment in response to a domestic violence complaint involving Beth and her boyfriend. As a result of their investigation, the police decided that the two children present at the apartment, M.R. and A.C, could not stay in the apartment. Arrangements were made to place M.R. and A.C. with appellant. At the time, appellant was already caring for C.R. In fact, appellant had been caring for C.R. since he was two months old, after Beth physically placed him with appellant. In April 2005, the Children Services Division of the Clermont County Department of Job and Family Services (the "agency") filed a complaint alleging that all three children were neglected.
 {¶ 3} On May 10, 2005, the three children were adjudicated neglected and placed in the temporary custody of the agency. The children continued to live with appellant until June 21, 2005. That day, the children were removed from appellant's house after it was discovered that M.R. had contact with her father during a weekend in violation of the agency's instructions. On July 19, 2005, appellant filed a motion for legal custody of the children. Following a hearing on the motion, the magistrate denied the motion on June 16, 2006. The magistrate found that it was not in the best interest of the children to be placed in the custody of appellant.
 {¶ 4} Appellant and Beth both filed objections to the magistrate's decision. A.C.'s father subsequently filed a request to permanently surrender custody of A.C. to the agency. A magistrate approved the request on August 28, 2006. On November 3, the trial court overruled appellant's and Beth's objections to the magistrate's decision. On November 27, Beth filed requests to permanently surrender custody of all three children to the agency. Beth's requests were approved by the trial court that same day. Appellant filed a notice of appeal on December 4. On December 14, the father of M.R. and C.R. filed requests to *Page 3 
permanently surrender custody of M.R. and C.R. to the agency. The trial court approved the requests on December 18.
 {¶ 5} On appeal, appellant raises the following assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING SHAWN [H.'S] MOTION FOR CUSTODY."
 {¶ 7} Before we address appellant's assignment of error, we first address the state's preliminary argument that because permanent surrender agreements are typically irrevocable, the assignment of error should be overruled. The state argues that when the children's parents "permanently surrendered the children, they circumnavigated the issue of whether [appellant] had a right to a change of physical custody." CitingIn re S.J., 106 Ohio St.3d 11, 2005-Ohio-3215, appellant, in turn, argues that once the notice of appeal was filed, the trial court no longer had jurisdiction to make "substantive rulings inconsistent with the jurisdiction of the Appellate Court." Appellant asserts that the trial court approved the permanent surrenders after the appeal had been filed. That is not entirely true. Only the permanent surrender agreements filed by the father of M.R. and C.R. were approved by the trial court after the notice of appeal was filed.
 {¶ 8} "An appeal is perfected upon the filing of a written notice of appeal. R.C. 2505.04. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal. The trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from. The adjudication of a child during the pendency of an appeal interferes and is inconsistent with the jurisdiction of the appellate court. Therefore, * * * a juvenile court lacks jurisdiction to proceed with an adjudication of a child after a notice of appeal has been filed from an order of that court." In re S.J. at ¶ 9 (citations omitted).
 {¶ 9} Permanent surrender agreements are governed by R.C.5103.15(B)(1) which *Page 4 
provides in relevant part: "[s]ubject to * * * juvenile court approval, the parents, guardian, or other persons having custody of a child may enter into an agreement with a public children services agency * * * surrendering the child into the permanent custody of the agency. * * * [A] public children services agency that seeks permanent custody of a child [under] this section shall file a request with the juvenile court * * * for approval of the agency's permanent surrender agreement with the parents, guardian, or other persons having custody of the child. * * * The court may approve the permanent surrender agreement if it determines that the agreement is in the best interest of the child[.]"
 {¶ 10} A permanent surrender agreement is merely a proposed agreement until it is approved by the juvenile court. Angle v. Children's ServicesDiv. (1980), 63 Ohio St.2d 227, 230. However, once approved by the juvenile court, a permanent surrender agreement, when voluntarily made without fraud or misrepresentation, is irrevocable except with the consent of the agency. In re Miller (1980), 61 Ohio St.2d 184, 189.
 {¶ 11} A juvenile court's consent to an agreement surrendering permanent custody of a child to a public children services agency pursuant to R.C. 5103.15 is not an adversary proceeding. Id. at paragraph one of the syllabus. Further, a juvenile court "does not, by consenting to a permanent surrender * * *, commit a child into the permanent custody of the [agency]. Rather, the court judicially sanctions a private transfer of custody which cannot be legally consummated without the court's approval. In other words, * * * a parental surrender pursuant to R.C. 5103.15 is not equivalent to a judicial commitment as authorized by R.C. Chapter 2151." Id. at 188. See, also,In re Bond (May 7, 1981), Pike App. No. 339.
 {¶ 12} Because a permanent parental surrender under R.C. 5103.15 is not equivalent to a judicial commitment under R.C. Chapter 2151, we find that the trial court had jurisdiction to approve the permanent surrender agreements filed by the children's parents, including the agreements filed by the father with respect to M.R. and C.R., even though they were *Page 5 
approved after appellant filed her notice of appeal. By the same token, we also find that we are not prevented from addressing appellant's challenge of the denial of her motion for legal custody.
 {¶ 13} In her sole assignment of error, appellant argues that the trial court's denial of her motion for legal custody was unreasonable and arbitrary, and against the manifest weight of the evidence. Appellant also argues that the trial court's decision ignores statutory preferences that placements be made with relatives of the children.
 {¶ 14} Upon adjudicating a child as abused, neglected, or dependent, a juvenile court may award legal custody of a child to a parent or a nonparent upon a timely motion. R.C. 2151.353(A)(3). In making a custody decision, the best interest of the child is to be applied. In reBrown (2001), 142 Ohio App.3d 193, 198. Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, a juvenile court's standard of review in legal custody proceedings is by the preponderance of the evidence. In reNice (2001), 141 Ohio App.3d 445, 455; In re A.W.-G., Butler App. No. CA2003-04-099, 2004-Ohio-2298. A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." In re A.W.-G. at fn. 1.
 {¶ 15} A juvenile court's custody decision will not be reversed absent an abuse of discretion. Id. at ¶ 6. The discretion granted to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Id., quoting Miller v. Miller (1988), 37 Ohio St.3d 71,74. Thus, an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility. In re D.R., Butler App. Nos. CA2005-06-150 and *Page 6 
CA2005-06-151, 2006-Ohio-340, ¶ 12.
 {¶ 16} Appellant cites R.C. 3109.04(D)(2) and 2151.412(G)(2) as examples of statutory preferences for placement of children with relatives.[1] R.C. 3109.04 governs allocation of parental rights in domestic relations cases and is therefore not applicable here. R.C.2151.412(G) sets forth general priorities to be applied by a public children services agency and a juvenile court with regard to case plans. R.C. 2151.412(G)(2) does provide that if a child cannot be placed in the legal custody of his parents, the child should be placed "in the legal custody of a suitable member of the child's extended family[.]" However, "Ohio's courts have consistently recognized that the language in R.C.2151.412(G) is precatory, not mandatory. * * * [R.C. 2151.412] does not command the juvenile court to act in a specific manner. Instead, it sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them." In rel Halstead, Columbiana App. No. 04 CO 37,2005-Ohio-403, ¶ 39 (citations omitted). We therefore find that the trial court did not err by allegedly ignoring R.C. 3109.04(D)(2) and2151.412(G)(2).
 {¶ 17} In addition, it is well-established that relatives seeking custody of a child are not afforded the same presumptive rights that a natural parent receives. See In re Zoms, Franklin App. No. 02AP-1297, 2003-Ohio-5664; In re Davis (Oct. 12, 2000), Cuyahoga App. No. 77124. A juvenile court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. See In re P.P., Montgomery App. No. 19582, 2003-Ohio-1051. Rather, it is within a juvenile court's broad discretion to determine whether to place a child with a relative, such as an aunt. *Page 7 
See In re Patterson (1999), 134 Ohio App.119. Thus, we will reverse such a decision only upon an abuse of that discretion.
 {¶ 18} The record shows that appellant lives with her husband and their adult son ("Eddie") in a small but neatly kept house owned by appellant's mother. Appellant rents the house from her mother. Appellant spends a good deal of time attending the needs of her mother, who has been bedridden for the last three years. Appellant also occasionally cares for her mentally handicapped brother who lives with their mother. Appellant's mother and handicapped brother do not live with appellant. Appellant has a close-knit extended family.
 {¶ 19} Appellant does not work and has not been employed since 1991. Her income consists of a monthly disability check for her husband and a monthly social security check for Eddie. Eddie suffers from paranoid schizophrenia, bi-polar effective disorder, or impulse control. Witnesses testifying on behalf of appellant testified to three different diagnoses. Appellant and several witnesses testified that Eddie is not violent or aggressive, that he is very loving and kind with children, that they had no qualms about Eddie being around young children, and that they would not let Eddie baby-sit or be alone with young children. Appellant testified that if she has legal custody of the three children, she plans to have Eddie share his bedroom with C.R. (her nephew) as long as it is acceptable to the agency.
 {¶ 20} Appellant's sister, appellant's brother (and the children's grandfather), appellant's niece, and Beth (the children's mother) all testified that they had no concerns about appellant's ability to care for the children, and that appellant should be granted legal custody of the children. Appellant was described as a caring, kind, nurturing caretaker who interacts very well with and was bonded with all three children. Appellant's brother also testified that the children have a strong bond with appellant, love her, and are very happy with her.
 {¶ 21} The only witness testifying on behalf of the state was Maria Rutherford, an *Page 8 
Finvestigator for the agency. Rutherford testified that she requested a home study on appellant's house, and that she had problems getting appellant and her husband to cooperate and comply with the home study requirements. Rutherford did not explain how appellant was uncooperative and noncompliant with the home study requirements. Rutherford was not cross-examined by appellant's attorney. Rutherford also testified that there were problems with the children getting medical care while with appellant. Specifically, C.R., who had been in appellant's care since he was two months old, was behind in his inoculations and checkups; A.C., an infant, had not had any well-baby checkups even though she had a serious kidney condition. Rutherford also described how appellant was argumentative with regard to making dental and medical appointments, including a dental appointment for M.R.
 {¶ 22} Appellant described how she had remedied several safety issues brought up by the home study. With regard to the children's medical care, appellant testified that once she had custody of the children under the agency's supervision, she took them to all of their medical appointments. The record shows that in July 2004 (before the agency's involvement), C.R. had penile surgery. Appellant took care of all of the pre and postoperative requirements. In April 2005, A.C. had kidney surgery. Appellant took care of all of the pre and post-operative requirements.
 {¶ 23} Appellant did admit that C.R.'s medical care before the agency's involvement (other than the penile surgery) was not the best. Appellant explained, however, that she originally agreed to take care of C.R. only on a day-to-day basis to help Beth, that she thought it would be for a short period of time, and that Beth was the person with the medical coverage for C.R. Appellant testified that once the agency was involved, however, she made all necessary medical appointments for the children. Appellant also testified that she argued about M.R.'s dental care because she had already made an appointment with a dentist other *Page 9 
Fthan the one suggested by the agency.
 {¶ 24} As stated earlier, the children were removed from appellant's home after it was discovered that M.R. had allegedly had contact with her father while visiting her great-grandmother during a weekend. Following that weekend, M.R.'s father tested positive for methamphetamine. The testimony about the incident was conflicting.
 {¶ 25} Rutherford testified that she found out about the incident from Beth. According to Rutherford, appellant was unequivocally told she could not send M.R. to spend time with her father and his family. Upon finding out about the incident, Rutherford confronted appellant, who at first denied being told she could not send M.R. to her father's side of the family. Appellant later admitted she had been told and apologized to Rutherford. Rutherford also testified that appellant repeatedly asked that M.R. live with her father and his family. By contrast, according to appellant's father, appellant never stated that M.R. should live with her father and his family.
 {¶ 26} Appellant testified that she sent M.R. and C.R. to spend the weekend with their paternal great-grandmother, and that she unequivocally told the great-grandmother that the children's father could not be around them. Appellant found out about the contact between M.R. and M.R.'s father when Rutherford called her. Appellant denied allowing M.R. to visit her father that weekend, and testified that she would not allow the father to be around M.R. and C.R.
 {¶ 27} Appellant testified that the only instructions from the agency she could remember were that all three children could not be released to their mother, and that M.R. and C.R. could not have any contact with their father. Appellant did not recall being told she needed the agency's permission before the children could stay overnight at another person's house. Appellant also stated that it was not her understanding that she had to obtain the agency's permission before sending the children to someone else's home. Appellant denied *Page 10 
Fadmitting to Rutherford that she had violated the agency's instructions and allowed contact between M.R. and her father.
 {¶ 28} Beth testified she found out about the contact between M.R. and her father after the fact, and that no one knew beforehand that M.R. would see her father while visiting her great-grandmother. Contrary to Rutherford's assertion, Beth also testified that it was Rutherford who brought the incident to Beth's attention.
 {¶ 29} Upon thoroughly reviewing the record, we find that there was competent, credible evidence supporting the trial court's determination that granting legal custody of the children to their great-aunt (appellant) was not in the best interest of the children. In light of the trial court's broad discretion in custody determinations, the fact that such a determination should be accorded the utmost respect by a reviewing court, the fact that credibility issues which are critical in custody cases do not translate into the record, and the fact that a trial court is not required to place a child with a relative, we cannot say that the trial court abused its discretion when it denied appellant's motion for legal custody of M.R., C.R., and A.C. Appellant's assignment of error is accordingly overruled.
 {¶ 30} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] Appellant also cites 42 USCS § 675(5)(C), which she argues requires that "before a permanent termination of parental rights, the child be considered for placement `for adoption, with a fit and willing relative,'" and "Chapter 7 of the Social Security Act, at 42 USCS § 641(a)(19)" as other examples of statutory preferences for placement of children with relatives. *Page 1