OPINION
{¶ 1} Appellant, Terri W., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting legal custody of her daughter, M.D., to the child's paternal grandparents, appellees, Irene and William D.[1] For the reasons set forth below, we affirm the *Page 2 
trial court's judgment.
 {¶ 2} M.D. was born on May 30, 1996. Her mother, appellant, and father, Mark D., who is not a party to this appeal, were married at the time. When appellant and Mark D. later divorced in 2000, Mark D. was granted legal custody of M.D. Appellant was granted legal custody of her other daughter, K.D., at that time, along with visitation with M.D. on weekends and holidays.
 {¶ 3} M. D. has resided off and on with appellees for the majority of her life, including time periods when appellant and Mark D. were married, and after Mark D. was granted legal custody of M.D. While Mark D. and M.D. were living with appellees, Mark D. was arrested on sexual abuse charges involving M.D. He was later convicted of multiple sexually-oriented offenses and sentenced to a term of life in prison.
 {¶ 4} In January 2004, following Mark D.'s arrest, appellees were granted temporary custody of M.D. pursuant to an emergency order. On May 19, 2004, M.D. was adjudicated an abused and dependent child, and placed in the temporary custody of appellees. The Butler County Children Services Board (BCCSB) subsequently filed a motion for legal custody on behalf of appellees, and custody hearings were held from February 14, 2005 to March 7, 2006. At the conclusion of the hearings, the magistrate granted appellees legal custody of M.D., and granted appellant visitation. Appellant's objections to the magistrate's order were subsequently overruled on August 7, 2006.
 {¶ 5} Appellant now appeals the trial court's decision granting legal custody of M. D. to appellees, advancing three assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "[R.C. 2151.353(A)(3)] IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO [APPELLANT'S] CASE. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO A NON-PARENT RELATIVE WHEN THE *Page 3 
MOTHER WAS NOT UNSUITABLE."
 {¶ 8} In her first assignment of error, appellant challenges the constitutionality of R.C. 2151.353(A)(3) on its face and as applied to her in this case, asserting, generally, that the statute violates due process requirements. Appellant contends the statute infringes on a natural parent's fundamental right to the custody of his or her child because it does not require a trial court to make a separate finding that the natural, noncustodial parent of a child previously adjudicated abused, neglected or dependent is unfit before the court may award legal custody of the child to a nonparent relative. We find this argument without merit.
 {¶ 9} "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." Woods v. Telb,89 Ohio St.3d 504, 510-511, 2000-Ohio-171, quoting State ex rel. Dickman v.Dejenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. "The party challenging the statute bears the burden of proving the unconstitutionality of the statute beyond a reasonable doubt." Id. at 511.
 {¶ 10} "A facial challenge to a statute is the most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid."Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 37, citingUnited States v. Salerno (1987), 481 U.S. 739, 745, 107 S.Ct. 2095. "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid." Id. Further, in an "as applied" challenge to a statute, the challenging party bears the burden of presenting "clear and convincing evidence of a presently existing set of facts that makes the statutes unconstitutional and void when applied to those facts." Id., citingBelden v. Union Cent. Life Ins. Co. (1944), 143 Ohio St. 329, paragraph six of the syllabus. *Page 4 
 {¶ 11} Appellant challenges the constitutionality of R.C.2151.353(A)(3), which provides as follows: "If a child is adjudicated an abused, neglected, or dependent child, the court may * * * [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."
 {¶ 12} While both the United States and Ohio Constitutions afford parents a fundamental right to the custody of their children, (SeeIn re James, 113 Ohio St.3d 420, 2007-Ohio-2335, ¶ 16; In reHockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16), custody determinations made pursuant to R.C. 2151.353(A)(3) require a court to consider the best interest of the child. See In re A.W.-G., Butler App. No. CA2003-04-099, 2004-Ohio-2298, ¶ 6. "The best interest of the child is the primary consideration" in such cases. In re Allah, Hamilton App. No. C-040239, 2005-Ohio-1182, ¶ 10.
 {¶ 13} The Ohio Supreme Court recently examined R.C. 2151.353(A)(3) in the case of In re C.R., 108 Ohio St.3d 369, 2006-Ohio-1191. Similar to appellant in this case, the natural, noncustodial parent inC.R. sought legal custody of his child, who had previously been adjudicated neglected based upon allegations concerning the custodial parent. Like appellant, the noncustodial parent seeking legal custody inC.R. argued that a court should be required to find each parent unsuitable before it may award legal custody of an abused, neglected or dependent child to a nonparent relative. He further argued that his "fundamental right to raise his * * * child should not be taken away by implication and that it is unfair for a parent to be penalized for the neglect by the other parent." Id. at ¶ 11.[2] *Page 5 
 {¶ 14} The court, however, rejected appellant's arguments and held that "when a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody of a child to a non-parent relative." Id. at ¶ 24. The court found that an adjudication of abuse, neglect or dependency "is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." Id. at ¶ 23.
 {¶ 15} Significantly, in reaching this conclusion, the court emphasized the difference between legal and permanent custody, in that "legal custody does not divest parents of residual parental rights, privileges, and responsibilities." Id. at ¶ 21. As such, a disposition pursuant to R.C. 2151.353(A)(3) does not "permanently foreclose the right of either parent to regain custody, because it is not a termination of all residual parental rights, privileges, and responsibilities." Id. at ¶ 23. Either parent may therefore petition the court for a modification of custody. Id.[3]
 {¶ 16} Here, the record demonstrates that M.D. was adjudicated abused and dependent on May 19, 2004. Appellant received notice of and was represented by counsel at the adjudication hearing. During the hearing, the court determined M.D. to be abused and dependent based upon "stipulations and testimony on the record." Notably, appellant did not object to the court's adjudication of M.D. as abused and dependent, and that matter is not *Page 6 
before this court.
 {¶ 17} When BCCSB filed a motion for legal custody of M.D. on behalf of appellees, appellant responded with her own motion for legal custody of M.D. The court held custody hearings spanning a period of several days, during which an extensive amount of testimony and documentary evidence was presented. At the conclusion of the hearings, the court applied the best interest of the child standard, set forth in R.C.3109.04(F), and found it was in M.D.'s best interest to grant appellees legal custody of the child and to allow appellant visitation.
 {¶ 18} The court's prior adjudication of M.D. as abused and dependent permitted the court to grant legal custody of the child to a nonparent upon a finding it was in the child's best interest. See In re C.R.
at ¶ 24. See, also, In re A.W.-G. at ¶ 6, 11. Under the authority ofC.R., the court was not required to find appellant unsuitable before making such disposition, as the court's previous adjudication of M.D. as abused and dependent implicitly involved a finding of appellant's unsuitability. See In re C.R. at ¶ 22-24.
 {¶ 19} As emphasized by the court in C.R., this procedure does not constitute a "termination of all residual parental rights, privileges, and responsibilities," and therefore, does not foreclose the ability of appellant to seek a change of custody in the future, in accordance with R.C. 2151.42. Id. at ¶ 23. Although appellant argues she could be denied the opportunity to raise M.D. indefinitely under this procedure, appellant has not filed a motion for a change of custody and any argument concerning that issue is therefore not ripe for review at this time.
 {¶ 20} Based upon the foregoing, we find appellant has failed to demonstrate beyond a reasonable doubt that R.C. 2151.353(A)(3) is unconstitutional. Appellant has failed to demonstrate the statute violates due process requirements, as the statute applies where a child has previously been adjudicated abused, neglected or dependent. As indicated in C.R., such an adjudication implicitly involves a determination of parental unsuitability. In addition, in *Page 7 
applying R.C. 2151.353(A)(3), a court must make its custody determination in accordance with the best interest of the child. Because such determinations do not terminate all residual parental rights, privileges, and responsibilities, however, procedures remain in place for a natural parent to regain custody of his or her child. Accordingly, we overrule appellant's first assignment of error.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT AWARDED CUSTODY TO [APPELLEES] WHICH WAS NOT IN THE CHILD'S BEST INTERESTS."
 {¶ 23} Assignment of Error No. 3:
 {¶ 24} "THE COURT'S CUSTODY ORDER IS NOT IN THE CHILD'S BEST INTERESTS AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} In her second and third assignments of error, appellant argues the trial court erred in awarding legal custody of M. D. to appellees upon a finding that such placement was in the child's best interest. We disagree.
 {¶ 26} As stated, upon adjudicating a child as abused, neglected, or dependent, a juvenile court may award legal custody of a child to a parent or a nonparent upon a timely motion. R.C. 2151.353(A)(3). A court must make its custody decision in accordance with the best interest of the child. In re A.C, Butler App. No. CA2006-12-105, 2007-Ohio-3350, ¶ 14;In re A.W.-G., 2004-Ohio-2298 at ¶ 6. Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, a juvenile court's standard of review in legal custody proceedings is by a preponderance of the evidence. Id.;In re Nice (2001), 141 Ohio App.3d 445, 455; In re A. W.-G. A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it."In re A. W.-G. at fn. 1. *Page 8 
 {¶ 27} A juvenile court's custody decision will not be reversed absent an abuse of discretion. In re A.C. at ¶ 15. The discretion granted to a juvenile court in custody matters "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." In re A.W.G., quoting Miller v. Miller (1988),37 Ohio St.3d 71, 74. Thus, an appellate court affords deference to a judge or magistrate's findings regarding witness credibility. In re A.C.
at ¶ 15, citing In re D.R., Butler App. Nos. CA2005-06-150, CA2005-06-151,2006-Ohio-340, ¶ 12.
 {¶ 28} In addition, "in determining whether a decision of a trial court is against the manifest weight of the evidence, an appellate court is guided by the presumption that the trial court's findings were correct." In re Peterson (Aug. 28, 2001), Franklin App. No. 01AP-381, at 3, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."Davis v. Flickinger, 77 Ohio St.3d 415, 418, 1997-Ohio-260, quotingBechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.
 {¶ 29} Our review of the record indicates that the trial court considered the relevant factors in making its best interest determination, and that the evidence presented during the custody hearings supports the trial court's findings. The record indicates that M.D. has been in the temporary custody of appellees since January 2004. Before that time, M.D. had resided with appellees for a significant portion of her life, both when appellant and the child's father, Mark D., were married, and when Mark D. had custody of M.D. following the couple's divorce. Appellant has regular visitation with M.D., during which M.D. has contact with her sister, K.D. *Page 9 
 {¶ 30} The evidence presented during the custody hearings demonstrates that M. D. is well-adjusted in appellees' home and is involved in various activities such as church, choir, and Big Brothers Big Sisters. The evidence also demonstrates that M.D. is attending school where she receives special attention due to learning disabilities and that she is currently doing well in school. Appellees have also hired a tutor for M.D. in the summer. Her performance in school has improved and M.D. is considered by school officials to be a good student. Appellees are active in M.D.'s schooling and regularly attend school-related conferences and functions. The trial court found that awarding appellant custody of M.D. would result in M.D. having to change schools, and that such change would not be in her best interests if it were to occur during the school year.
 {¶ 31} In addition, the record indicates that appellees have been diligent and supportive in assuring that M.D. participates in regular therapy sessions with Melanie Grosser of Catholic Social Services. M.D. attends therapy sessions to help her cope with the abuse she suffered by her father and to help her establish personal boundaries that were compromised as a result of such abuse. Grosser testified that M.D. will need on-going therapy for an indefinite period of time to cope with these issues. She also indicated that appellees are cooperative and attentive in attending sessions when necessary, in assuring M.D.'s attendance, and in following suggestions she makes for M.D.'s behavioral and psychological growth.
 {¶ 32} Significantly, the evidence presented during the custody hearings indicates that appellees are also cooperative in facilitating and complying with visitation between appellant and M.D.
 {¶ 33} With respect to appellant, the record indicates that she has experienced a significant period of residential instability within the past several years. She has been homeless at various times in the past and has lived at numerous residences. At present, *Page 10 
appellant is cohabiting with Carl Lawson and her other daughter, K.D. While she reports that she and Lawson have a strong and stable relationship, the testimony presented during the custody hearings demonstrates that appellant has filed a domestic violence complaint against Lawson as recently as 2004.
 {¶ 34} The record indicates appellant has had numerous other live-in boyfriends in the past several years as well. In addition, there have been allegations of sexual abuse involving appellant's other daughter, K.D., while K.D. was living with appellant. Notably, Dr. Moore evaluated appellant prior to trial and concluded that placement of M.D. in her care would not be appropriate due to appellant's psychological problems and instability. He based his conclusion in part on appellant's own history of abuse by her father, removal from her mother and placement in foster care when she was a child, and mental health issues for which she has been treated with psychotropic medications.
 {¶ 35} Grosser also testified during the custody hearings that M.D. felt conflicted in choosing with whom she wanted to live, though it was clear that she loves both her mother and grandparents very much. The trial court conducted an in camera interview with the child to determine whether she was capable of making such a choice, and if so, with whom she wanted to live. The court indicated following the interview that it was clear appellant had exerted significant influence over what M.D. reported to the court, and had provided her with information concerning the case in an effort to manipulate her loyalties.
 {¶ 36} While appellant argues that granting legal custody of M.D. to appellees is not in the child's best interest because appellees are "in denial" about their son's guilt, reside in the same house where M.D.'s father abused her, and because appellee, Irene D., has a history of depression, our review of the record indicates the trial court thoroughly considered both the beneficial and detrimental aspects of placing M.D. with either party in making its best interest determination. The court found it was in M.D.'s best interest to be placed in a stable *Page 11 
environment with parental figures who can provide and model appropriate behavior, and understand her psychological needs resulting from her abuse by her father. The trial court was permitted to make its determination based upon its observation of the witnesses and to resolve issues concerning witness credibility, sincerity and truthfulness accordingly. See Davis, 77 Ohio St.3d at 418-419.
 {¶ 37} After thoroughly reviewing the record, we find that the evidence presented at the custody hearings supports the trial court's findings, and that the trial court did not abuse its discretion in granting legal custody of M.D. to appellees. Our review of the record indicates that competent, credible evidence supports the trial court's determination that granting legal custody of M.D. to appellees was in the child's best interest. Appellant's second and third assignments of error are therefore overruled.
 {¶ 38} Judgment affirmed.
YOUNG, P.J. and BRESSLER, J., concur.
[1] For purposes of clarity in this opinion, we refer to M.D.'s grandparents, Irene and William D., as "appellees." Butler County Children Services Board and M.D.'s guardian ad litem, Brian Harrison, are also appellees herein.
[2] In C.R, the natural father of the child at issue sought legal custody following the juvenile court's adjudication of the child as neglected. The father learned of his paternity of the child after the children services board filed a complaint alleging the child was neglected based upon the child's mother having a substance abuse problem. The complaint named "John Doe" as the child's father, but after confirming his paternity of the child, the natural ather began attending the court proceedings. The court later adjudicated the child neglected. After legal custody motions were filed by both the natural father and the child's aunt and uncle, the court held custody hearings and granted legal custody to the aunt and uncle. The natural father appealed, and the Eighth District Court of Appeals reversed on the basis the trial court was required to find the natural father unsuitable before awarding legal custody to a nonparent. The Eighth District thereafter certified a conflict between its decision and that of other districts to the Ohio Supreme Court.
[3] Notably, the Ohio Supreme Court recently ruled that R.C.3109.04(E)(1)(a), concerning the modification of a prior decree allocating parental rights and responsibilities, is constitutional.In re James, 113 Ohio St.3d 420, 2007-Ohio-2335. *Page 1