**[Cite as *In re C.D.*, 2012-Ohio-2026.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: C.D. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| | : | |
| | : | Case No. CT11-0048 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Muskingum County Court of Common Pleas, Juvenile Division, Case No. 21030157

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: April 27, 2012

APPEARANCES:

For Appellant:

FREDERICK A. SEALOVER
45 N. Fourth Street
P.O. Box 2910
Zanesville, OH 43702-2910

For Appellee:

D. MICHAEL HADDOX,
Muskingum County Prosecutor

MOLLY L. MARTIN
27 North Fifth Street, P.O. Box 189
Zanesville, OH 43702-0189

PETER N. CULTICE (G.A.L.)
58 North Fifth Street
Zanesville, OH 43701

*Delaney, J.*

{¶1} Appellant Chyanne Dunn appeals from the July 9, 2011 judgment of the Muskingum County Court of Common Pleas, Juvenile Division, finding her child C.D. to be an abused, neglected, and dependent child and placing him in the legal custody of Ebony Small. Appellee is Muskingum County Children Services.

{¶2} The facts below are adduced from the record of the dispositional hearing on May 24, 2011.

## FACTS AND PROCEDURAL HISTORY

{¶3} C.D. is the son of Chyanne Dunn ("Mother") and Harold Small, Jr. ("Father"); his date of birth is March 6, 2010. Wesley West is Mother's live-in boyfriend. Ebony Small is Father's sister and C.D.'s aunt.

### Discovery of Bruises

{¶4} This case arose on December 23, 2010 when Ebony Small picked C.D. up at Mother's house to bring him to visit with Father. Ebony immediately noticed bruises on C.D.'s face; in her words, it appeared "someone squeezed his face." The bruises looked like handprints.

{¶5} Ebony asked Mother about the bruises. She told Ebony that C.D. had the bruises on his face when he woke up that day, and she thought they may have been caused by the slats on his crib.

{¶6} Ebony brought C.D. to her grandmother's house where Father met them for his visit. Father called the Zanesville Police Department and an officer responded. Upon the officer's advice, Ebony and Father took C.D. to the emergency room where he was evaluated and the bruising was documented.

*Investigation of Bruises*

{¶7}  Detective Jon Hill of the Zanesville Police Department investigated the bruising to C.D.  Due to the time frame in which the injuries occurred, Mother and West were the only adults who had access to C.D. and were therefore the only suspects.  Mother told Hill that she didn't really notice the bruises until they were brought to her attention.   Hill was unable to determine the perpetrator of the bruises; both Mother and Wesley West refused a polygraph and did not cooperate with his investigation.  Ultimately the criminal investigation was closed and no charges were filed.

{¶8}  Appellee also investigated the source of the injuries, and appellee's investigator considered Mother and/or West to be the likely perpetrators.  Appellee's investigator testified Mother and West were the only two adults to have contact with C.D. in the two days leading up to the discovery of the bruising.

{¶9}  Mother gave several different explanations for the bruising: C.D.'s head became stuck between the bars of his crib; he is learning to walk and may have fallen down; the bruises may have been caused by West's three-year-old son.  Appellee's investigator testified these explanations were not consistent with the injuries.

{¶10} Appellee presented several photographs as evidence at the custody hearing.   These photographs show distinctive, obvious bruising to C.D.'s face.  Another photo shows C.D's crib and indicates the distance between the slats.

*Expert Opinion of Child Abuse*

{¶11} Dr. Jonathan Thackeray is an expert in pediatric medicine with a focus on child abuse.  He examined C.D. on December 28, 2010, upon referral by appellee.

In addition to a head-to-toe examination, this assessment included review of the earlier photos of the bruises. Dr. Thackeray also spoke with Mother and West and reviewed C.D.'s medical and developmental histories.

{¶12} Dr. Thackeray noted that C.D. had multiple bruises to his cheeks and temporal area on both sides of his face.

{¶13} Dr. Thackeray testified Mother's explanations regarding the source of the bruising are not reasonable due to the extent of C.D.'s injuries. If he had fallen or struck his head on a crib slat, the injuries would occur to protruding areas such as the forehead, knees, shins, or elbows. C.D.'s injuries, however, are to the protected areas of his cheeks and eyes. Dr. Thackeray also dismissed the explanation that West's three-year-old caused the bruising, noting that these injuries represented the application of significant force. Moreover, Mother did not provide any history consistent with a three-year-old causing these injuries.

{¶14} Dr. Thackeray opined the bruises resulted from repeated traumatic injury caused by repeatedly striking the face with a hand or some other object. Dr. Thackeray could not date the bruises, but noted that they were of different colors and were readily apparent such that anyone would immediately notice them. Ultimately Dr. Thackeray concluded the bruising was due to physical abuse.

*Mother's Case Plan*

{¶1} Appellee filed a complaint alleging abuse, neglect, and dependency on December 29, 2010. A safety plan is a voluntary agreement between a parent and the children's services agency which allows a child to remain with a relative while the agency investigates.

{¶2} Father is not a custody option because he has a "concerning" criminal record and was on parole at the time of these events.

{¶3} Initially appellee developed a safety plan with Mother and C.D. stayed with maternal grandmother, but that placement was deemed to be inappropriate in light of grandmother's criminal history. A new safety plan was developed but Mother did not comply and appellee filed for temporary custody. In the meantime, C.D. was placed with Ebony Small.

{¶4} C.D.'s ongoing caseworker testified about Mother's progress on her case plan. Mother complied with a number of components: she completed an assessment for drug abuse, submitted to random drug screens with no positive results, and attended Help Me Grow classes. Her progress with Help Me Grow was reportedly "so-so;" she attended but was not actively engaged.

{¶5} The caseworker noted issues with visitation. Ebony kept a log of Mother's visits with C.D., which were supposed to be Wednesdays and Sundays from two p.m. to four p.m. These visits at Ebony's house did not go well, according to the worker, and Mother missed about half of her visits. Mother was supposed to call within a half hour of the visit, but sometimes missed visits because she called too late.

{¶6} Ebony stated that Mother only calls to ask about C.D. when she's supposed to.

{¶7} At the time of the dispositional hearing, and throughout the progress of the case, Mother still lived with West.

*Ebony Small Obtains Temporary Custody*

{¶8}   C.D. was placed in the temporary custody of Ebony Small on February 24, 2011, and he moved into her home on March 11, 2011 after a home study was completed.

{¶9}   The caseworker testified C.D. is doing well living with Ebony and her live-in boyfriend, B.J. Norris.  Appellee requests placement of C.D. with Ebony due to the unknown source of his injuries.

{¶10} Father approves of placement of C.D. with Ebony.  Father had been working on his own case plan but was then sentenced to prison and requested that Ebony be granted custody.

{¶11} Ebony testified about her stable lifestyle.  She works at Genesis Health Care System in the lab approximately 45 hours per week on the midnight shift and lives with Norris.  When Ebony is at work, Norris and her mother and sister help with C.D.'s care.

{¶12} Ebony is willing to keep C.D. long-term and wants to do so.  She testified that she does want legal custody of C.D., but recognized he needs his mother in his life.  Until his safety is assured, however, Ebony noted that she loves him and wants to provide for his needs.

{¶13} An adjudicatory dispositional hearing was held on May 24, 2011.  On July 29, 2011, the trial court ruled that C.D. is an abused, neglected, and dependent child as defined in sections 2151.03(A)(2), 2151.031(D), and 2151.04(C) of the Ohio Revised Code and placed him in the legal custody of Ebony Small.

{¶14} Mother appeals from the trial court's July 29, 2011 judgment entry.[1]

{¶15} Appellant raises one Assignment of Error:

{¶16} "THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING LEGAL CUSTODY OF C.D. TO EBONY SMALL AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

{¶17} In her sole assignment of error, appellant argues that the evidence did not support the trial court's finding it was in the best interest of the child to be placed in the legal custody of the Ebony Small. We disagree.

{¶18} We first note this was a grant of legal custody, not permanent custody. Legal custody does not divest parents of residual parental rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, at ¶ 17. This means appellant may petition the court for a modification of custody in the future. *Id.*

{¶19} We recognize that the right to parent one's children is a fundamental right. *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "However, government has broad authority to intervene to protect children from abuse and neglect." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 28.

---

[1] Appellant's counsel initially filed an *Anders* brief and a Motion to Withdraw as Court-Appointed Counsel. On November 9, 2011, we ruled that an *Anders* brief is not appropriate in a legal custody case, struck the original brief, and found counsel's motion to withdraw to be moot. Appellant then filed the instant brief on November 22, 2011.

{¶20} R. C. 2151.353 (A)(3) states in relevant part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

{¶21} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:

{¶22} "(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;

{¶23} "(b) That the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to

continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the state board of education, whichever occurs first.

{¶24} "(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

{¶25} "(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have."

{¶26} Mother does not argue that Ebony Small has failed to comply with R.C. 2151.353. Pursuant to the requirements thereof, we note that Ebony Small signed the affidavit/statement of understanding for legal custody on May 24, 2011. We find that the trial court's decision that it is in the best interest of C.D. to grant legal custody to Ebony Small is supported by the preponderance of the evidence.

{¶27} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is preponderance of the evidence. *In re A.C.,* 12th Dist. No. CA2006-12-105, 2007-Ohio-3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist. 2001).

{¶28} In this type of dispositional hearing, the focus must be the best interest of

the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re Nawrocki*, 5th Dist. No. 2004-CA-0028, 2004-Ohio-4208.

{¶29} R. C. 2151.414(D) provides factors to be considered in making a best-interest-of-the-child determination:

"In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶30} A trial court's determination on legal custody should not be overruled absent a showing of an abuse of discretion. *In re* Unger, 5th Dist. No. 04CA6, 2005-Ohio-2414. An abuse of discretion is when the trial court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶31} The concern in this case is the evident physical abuse to C.D., coupled with Mother's lack of a supportable explanation and apparent failure to seek treatment. Mother did offer a number of explanations for the bruises to a number of investigators, but none of these explanations were corroborated by the evidence. Investigators necessarily concluded that Mother and/or West caused the bruises. At the dispositional hearing, Mother still lived with West. Despite Mother's progress on her case plan, this unresolved threat to C.D.'s physical well-being weighs substantially in our determination.

{¶32} The evidence adduced at hearing demonstrates C.D. interacts well with Ebony. He is too young to express his wishes, but he has done well in Ebony's temporary custody. Ebony has a support system in place to help her care for C.D., and she has demonstrated her willingness and ability to care for C.D. long-term.

{¶33} Based on the evidence presented, we find the trial court did not abuse its discretion in finding by a preponderance of the evidence that it was in the best interest of C.D. that legal custody should be granted to Ebony Small.

{¶34} Mother's sole assignment of error is overruled.

{¶35} The judgment of the Muskingum County Court of Common Pleas, Juvenile Division is hereby affirmed.

By: Delaney, P.J.

Farmer, J. and

Wise, J. concur.

_____

HON. PATRICIA A. DELANEY

_____

HON. SHEILA G. FARMER

_____

HON. JOHN W. WISE

[Cite as *In re C.D.*, 2012-Ohio-2026.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF: C.D.

:
:
:
:
:
:
:     JUDGMENT ENTRY
:
:
:
:
:     Case No. CT11-0048
:

For the reasons stated in our accompanying Opinion on file, the judgment of the Muskingum County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE